RICHARD HOWARD, A. C. GOINES, ET AL., T/D/B/A KINGS DRIVE PARTNERSHIP FUND, A LIMITED PARTNERSHIP v. JACK T. HAMILTON

RICHARD HOWARD, A. C. GOINES, ET AL., T/D/B/A KINGS DRIVE PARTNERSHIP FUND, A LIMITED PARTNERSHIP v. FRANCIS H. FAIRLEY, S. DEAN HAMRICK, JACK T. HAMILTON, AND JAMES D. MONTEITH

RICHARD HOWARD, A. C. GOINES, ET AL., T/D/B/A KINGS DRIVE PARTNERSHIP FUND, A LIMITED PARTNERSHIP v. FRANCIS H. FAIRLEY, S. DEAN HAMRICK, JACK T. HAMILTON, AND JAMES D. MONTEITH

No. 7526SC880

(Filed 17 March 1976)

1. **Frauds, Statute of § 5— attorney's oral guaranty of corporation's note — main purpose rule**

    An attorney's oral guaranty that if plaintiffs invested in a limited partnership money which was to be loaned by the partnership to a corporation, he would personally repay said sum plus interest to the investors in the event the corporation defaulted on its obligation, did not come within the "main purpose" exception to the Statute of Frauds and was unenforceable under the Statute of Frauds. G.S. 22-1.

2. **Limitation of Actions § 4; Partnership § 7— action by limited partnership — statute of limitations — knowledge of general partners imputed to limited partners**

    An action by a limited partnership against a law firm based on breach of contract and fraud was barred by the three-year statute of limitations, G.S. 1-52, where the two general partners of the limited partnership had knowledge of the transactions forming the basis of the action more than three years before the action was commenced, since the knowledge of the general partners was imputed to the limited partners.

APPEAL by plaintiffs from *Baley, Judge.* Judgments entered 15 May 1975 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 20 February 1976.

Plaintiffs brought two of these actions against the partners of a Charlotte law firm, alleging that defendants are liable to them for breach of contract, negligence, constructive fraud and actual fraud. In the action against Hamilton individually, they allege that defendant Hamilton is individually liable as the guarantor of a note payable to them. The three cases were consolidated for trial.

The evidence offered by plaintiffs is lengthy, extremely complicated, and often contradictory. Viewed in the light most favorable to plaintiffs, it tends to show the following:

Prior to 1964, defendant Hamilton had represented plaintiffs Howard and Goines in numerous business activities, and they considered him their lawyer. In early 1964 Paway, Inc., undertook a development project involving the construction of a motel and office complex on Kings Drive in Charlotte. Paway obtained a $2,700,000 construction loan from the First National Bank of Boston and a permanent loan commitment from two lenders, Mutual Benefit of New Jersey and Florida Capital Corp., each agreeing to furnish a portion of the funds. In order to raise additional capital, defendant Hamilton, Paway's attorney, and Clifford Hemingway, Paway's secretary-treasurer, met with plaintiffs Howard and Goines and asked them to raise $200,000 for the project. They agreed to do so, and it was decided that the persons furnishing these funds, including Howard and Goines themselves, would not only receive a note and deed of trust from Paway, but also a substantial amount of preferred stock.

Hamilton, Howard and Goines agreed that the money should be raised from a large number of investors by means of a limited partnership, and Hamilton prepared an agreement creating a limited partnership, with Howard and Goines as general partners and all the other investors as limited partners. Defendants also prepared an escrow agreement providing that as funds were contributed to the partnership they should be held in escrow by the Bank of Charlotte, and that these funds should be turned over to Paway when $200,000 had been raised and Paway had executed a note and deed of trust constituting a valid mortgage on all real estate owned by Paway. The agreement established 15 May 1964 as the deadline for raising the funds. Goines prepared and Hamilton approved an information sheet for distribution to prospective investors, showing that each investor would receive 6 percent annual interest on his

investment, plus 60 shares of preferred stock in Paway at a par value of $10 per share for each $1,000 invested. Howard and Goines were to receive a larger amount of preferred stock for themselves. By 14 May 1964 Howard and Goines had raised $90,000.

Howard and Goines arranged a supper meeting on the night of 14 May 1964, and at this meeting they, defendants Hamilton and Monteith, and about 150 prospective investors were present. Hamilton was late in arriving at the meeting and several others had spoken to the group before he arrived. Hamilton gave a speech urging everyone present to invest in the partnership, and he represented that the partnership would have a lien on Paway's property superior to all other creditors except the construction and permanent lenders; that for all practical purposes the partnership would have a second lien, although it would technically be a third lien since the original permanent loan commitment had been given by two different lenders; that he had just that day obtained a $3,000,000 permanent loan commitment from another lender, which would be sufficient to pay off both the construction loan and the partnership loan; that because of this, investors in the partnership "couldn't lose," and this was "[t]he sweet thing about it," and that he himself would personally guarantee the investment of anyone who contributed to the partnership.

In reality it was not true that the partnership lien would be subordinate to the construction and permanent loans only. Early in 1964 Paway had entered into an agreement to borrow $587,000 from Southeastern Mortgage Investors Trust (SMIT) to finance the purchase of three tracts of land comprising the main part of the project area. For technical reasons the loan was not made directly from SMIT to Paway, but rather to three straw men or "nominees," each of whom purchased one of the tracts and executed a note and deed of trust to Goodyear Mortgage Corporation (Goodyear), an organization closely linked to SMIT, for a portion of the total loan. Paway then purchased the three tracts from the straw men and assumed the three deeds of trust, which secured a total indebtedness of $587,000 and were superior to the partnership lien. Defendants participated in the negotiations between SMIT and Paway and prepared the deeds from the straw men to Paway. Additionally, in deeds of trust recorded by defendants on behalf of Paway on 7 July 1964, 15 May 1965 and 24 September 1965, Paway granted Goodyear a lien on several other tracts within the

general project area to secure an additional loan of $298,000 made to Paway by SMIT.

After the meeting of 14 May 1964, the limited partnership received additional contributions of $210,000, for a total of $300,000. On 15 June 1964 defendant Monteith notified the Bank of Charlotte that Paway had executed a note and deed of trust to the partnership as required by the escrow agreement, and the $300,000 was turned over to Paway. $20,000 of these funds was paid to defendants' firm for legal fees, and an additional payment of $3,000 was paid to Hamilton personally. After 15 June 1964, Goines repeatedly asked defendants for a copy of the partnership's deed of trust, and each time defendants assured him that it had been duly executed and recorded and was in the office somewhere, but it had been misplaced. In June of 1966 Goines and Howard employed a lawyer from Newton to examine the records and find out if the deed of trust had been recorded. The lawyer reported that it had not. On 17 November 1966 a deed of trust from Paway to Hamilton as trustee for the benefit of the partnership, was finally recorded; this deed of trust was dated 15 June 1964 but was not signed until 1965 or 1966 and made reference to a map dated March 1965.

Construction of the motel and office building was repeatedly delayed, and finally after several false starts the contractor abandoned the job entirely. The construction loan deed of trust was foreclosed. The proceeds of the foreclosure sale were sufficient to pay off in full the lien of the construction lender, and also a lien which had been obtained by one of the contractors pursuant to a consent judgment. While there were also sufficient funds to pay off one of the SMIT liens in part, the partnership's investment was lost entirely.

At the conclusion of plaintiffs' evidence, the court allowed defendants' motions for a directed verdict. Plaintiffs appealed.

*James, Williams, McElroy & Diehl, P.A., by William K. Diehl, Jr., Henry James, Jr., and James H. Abrams, Jr., for plaintiff appellants.*

*Golding, Crews, Meekins, Gordon & Gray, by John G. Golding, and Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by Sydnor Thompson, for defendant appellees in cases 69CVS2139 and 69CVS2040.*

*Wallace S. Osborne for defendant appellee Jack T. Hamilton in case 69CVS2138.*

BRITT, Judge.

Did the trial court err in directing a verdict in favor of defendant Hamilton in the separate action against him (No. 69-CVS-2138)? We hold that it did not.

[1] In our opinion, the oral promise allegedly made by defendant Hamilton was unenforceable under the Statute of Frauds, G.S. 22-1, which provides in pertinent part as follows: "No action shall be brought whereby . . . to charge any defendant upon a special promise to answer the debt, default or miscarriage of another person, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party charged therewith or some other person thereunto by him lawfully authorized."

Plaintiffs' separate action against defendant Hamilton is based on their contention that defendant Hamilton orally guaranteed that if plaintiffs invested $300,000 in the Kings Drive Partnership Fund, he would personally repay said sum plus interest to the investors in the event Paway, Inc., defaulted in its obligation. Clearly, the alleged promise was one to answer the debt, default or miscarriage of another, thus would be barred by the statute unless shown to come within some recognized exception thereto.

Plaintiffs argue that this case falls within the "main purpose rule," a well known exception to the Statute of Frauds. This rule is restated in *Burlington Industries, Inc. v. Foil*, 284 N.C. 740, 748, 202 S.E. 2d 591, 597 (1974), as follows:

> " ' . . . [W]henever the main purpose and the object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either a benefit to himself, or damage to the other contracting party, his promise is not within the statute, although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing that liability. . . .' "
> [Quoting *Emerson v. Slater*, 63 U.S. (22 How.) 28, 43, 16 L.Ed. 360, 365 (1859)]

After a careful review of the lengthy, and oftentimes conflicting, evidence presented by plaintiffs, we conclude that the evidence did not justify the submission of an issue to the jury under the main purpose rule.

We consider next the question whether the trial court erred in directing verdicts in favor of defendants in the other two actions (Nos. 69-CVS-2139 and 2140). We hold that it did not.

Defendants contend that the directed verdicts in their favor were proper for four reasons: (1) that the evidence failed to establish a breach of duty owed plaintiffs by defendants; (2) that any claims which plaintiffs might have had against defendants are barred by the statute of limitations; (3) that plaintiffs failed to show any damage proximately resulting from the alleged conduct of defendants; and (4) that plaintiffs are estopped to assert their alleged claims. Our holding that directed verdicts in favor of defendants were proper is based upon their plea of the statute of limitations and we do not reach any of the other three grounds argued.

[2]   One of the primary keys to these cases is the $587,000 indebtedness represented by the notes covering the funds used to purchase the lands. Plaintiffs contend that they were not aware of these notes in 1964 and did not agree, implicitly or explicitly, that their deed of trust would be junior to the deeds of trust securing these notes. Defendants contend that plaintiffs Goines and Howard had full knowledge of the notes in 1964 and that their knowledge was imputed to the other plaintiffs.

Since the statute of limitations was pleaded by defendants, the burden of showing that the action was instituted within the prescribed period was placed upon plaintiffs. *Little v. Rose,* 285 N.C. 724, 208 S.E. 2d 666 (1974). It clearly appears that G.S. 1-52, the three years' statute of limitations, would apply to actions of this type. Although the actions were instituted on 1 April 1969, the record discloses that defendants executed a prospective waiver of the statute of limitations on 25 April 1968. Therefore, did plaintiffs discover, or should they have discovered, the alleged fraud or breach of contract prior to 25 April 1965?

The record firmly establishes that plaintiffs formed a limited partnership, that plaintiffs Goines and Howard are general partners and the other plaintiffs are limited partners. Not only was knowledge of the general partners imputed to the limited partners, but the knowledge of plaintiffs Goines or Howard was imputed to the other. *Friend v. H. A. Friend & Company,* 416 F. 2d 526 (9th Cir. 1969), *cert. denied,* 397 U.S. 914, 25 L.Ed. 2d 94, 90 S.Ct. 916 (1970) ; *Higgins v. Pottery Company,*

279 F. 2d 46 (3rd Cir. 1960), *cert. denied,* 364 U.S. 899, 5 L.Ed. 2d 193, 81 S.Ct. 232 (1960) ; *Southern Chemical Company v. Bass,* 175 N.C. 426, 95 S.E. 766 (1918).

It will be noted that soon after the meeting of investors on 14 May 1964, the limited partnership received additional contributions of $210,000, for a total of $300,000; and that on 15 June 1964, when defendant Monteith notified the Bank of Charlotte that Paway had executed a note and deed of trust to the partnership as required by the escrow agreement, the bank turned the $300,000 over to defendants as attorneys for Paway.

Clifford Hemingway, an officer of Paway who was called by plaintiffs as a witness, testified that before the partnership arrangements were consummated (May 1964) he told plaintiff Goines of Paway's financial situation with respect to the subject real estate and particularly the SMIT loans, and that these loans would be ahead of the partnership indebtedness.

By cross-examination of certain of plaintiffs' witnesses, defendants caused to be identified and entered into evidence a written document entitled "GUARANTEE OF NOTES" and providing as follows:

"FOR VALUE RECEIVED, we jointly and severally guarantee the payment of principal and interest of each and all of the following notes: (1) that certain note of Paul G. Kaneklides and Wife, Nadya A. Kaneklides, dated May 28, 1964 in the principal amount of $187,000.00 to Goodyear Mortgage Corporation; (2) that certain note of Park Road Professional Center, Inc., dated May 28, 1964 in the principal amount of $200,000.00 to Goodyear Mortgage Corporation; (3) that certain note of Kings Inn of Knoxville, Inc., dated May 28, 1964 in the principal amount of $200,000.00 to Goodyear Mortgage Corporation, together with Deed of Trust securing each of the same as and when each of the same shall become due, and of any extension thereof in whole or in part; accept all their respective provisions; authorize the maker, without notice to us to obtain an extension or extensions in whole or in part, and waive protest, demand and notice of protest; and also agree that in case of nonpayment of principal and interest when due, action may be brought by the holder of all or any of these notes against us, at the option of said holders, whether or not action has been commenced against the

Howard v. Hamilton and Howard v. Fairley

maker; and agree in any such action, the maker may or may not be joined with us, at the option of the holder. We do hereby specifically authorize and empower owner and holder of the notes hereby guaranteed to subordinate the lien of the respective Deeds of Trust securing these loans or release the security entirely to the lien of a construction loan to the First National Bank of Boston in the amount of $2,700,000.00 and/or Mutual Benefit Life Insurance Company and Florida Capital Corporation in like amount and we hereby agree that such action would not constitute a release of the Guarantors.

"WITNESS OUR HANDS AND SEALS, this the 28 day of May, 1964."

The document bears the signatures of Jack T. Hamilton, Clifford E. Hemingway, Steve A. Pappas, C. S. Goines, A. C. Goines, Joseph E. Moore and Richard Howard. It also purports to have been executed by Paway, Inc., through its president and secretary on 28 May 1964. The aggregate amount of the three notes is $587,000 and the notes secure the SMIT loans.

When questioned on cross-examination regarding the foregoing document, plaintiffs Goines and Howard were extremely evasive. Plaintiff Goines admitted signing the agreement and knowing what it was for, but denied that he signed it on "May 28." He acknowledged that in interrogatories answered prior to trial that he admitted signing the agreement on 28 May 1964 "or that approximate date." Plaintiff Howard admitted signing the agreement but insisted that the "date" was written in. The document reveals that "28 May" was written in but that "1964" was typed similar to the other provisions of the document.

We hold that plaintiffs failed to carry the burden of showing that the actions were instituted within three years after they discovered, or by the exercise of due care should have discovered, the alleged breach of contract and fraud.

For the reasons stated, the judgments appealed from are

Affirmed.

Judges HEDRICK and MARTIN concur.