CONSOLIDATED CABLE, LTD., VICTOR M. WILDER, TAX MATTERS PARTNER, Petitioner v COMMISSIONER OF INTERNAL REVENUE, Respondent
Consolidated Cable, Ltd. v. Commissioner
Docket No. 19221-87
United States Tax Court
T.C. Memo 1990-657; 1990 Tax Ct. Memo LEXIS 732; 60 T.C.M. (CCH) 1546; T.C.M. (RIA) 90657; December 31, 1990, Filed Thomas E. Redding and Alan L. Tinsley, for the petitioner. Albert Balboni, for the respondent. SCOTT, Judge. SCOTT *2202 MEMORANDUM OPINION This case is before the Court on petitioner's motion to dismiss for lack of jurisdiction as to the year 1982 on the ground that this Court does not have subject matter jurisdiction over the proposed adjustments to the partnership income for that year because those adjustments are not "partnership" items. On March 23, 1987, the Commissioner issued a Notice of Final Partnership Administrative Adjustment for Consolidated Cable, Ltd. (Consolidated or partnership), proposing adjustments to partnership items for the partnership's years ending December 31, 1982, and December 31, 1983. Victor M. Wilder, the Tax Matters Partner of the partnership, timely filed a petition on behalf of the partnership with this Court for readjustment of partnership items. At the time the petition was filed, Consolidated had its principal place of business in Missouri City, Texas. United Cable Communications Company (UCC) was in the business of placing television *734 cable franchise rights with owners of multi-family residences and other institutions and reassigning those rights to others. Southern Cable T.V., Inc. (Southern), was in the business of acquiring and granting franchise rights for cable television systems. Southern obtained some of its franchise rights from UCC. Consolidated was formed to acquire certain cable television equipment, install and maintain such equipment in apartment and mobile home complexes, and obtain franchise rights for cable television service. Consolidated was to receive franchise rights from Southern for some cable television service in Las Vegas, Nevada. Paul Smith (Mr. Smith), attorney for Consolidated, prepared drafts of a recourse promissory note, franchise and equipment purchase agreement, franchise agreement, and bill of sale (transaction documents) between Consolidated and Southern sometime during July or August of 1982. At the same time, Mr. Smith also prepared a draft of a Certificate and Agreement of Limited Partnership (partnership agreement). Within a few weeks after the partnership agreement was drafted Victor M. Wilder (Mr. Wilder) *2203 and Russell Benton (Mr. Benton), who was sole shareholder and *735 president of Southern, told Mr. Smith they wished to make certain changes to the partnership agreement. Under date of September 1, 1982, Mr. Wilder, as the sole general partner, executed the partnership agreement as drafted by Mr. Smith and also executed it on behalf of the limited partners listed on schedule A attached to the agreement. This partnership agreement as so executed was filed with the Secretary of State of the State of Texas on April 4, 1983. There was a modification made to the original promissory note drafted by Mr. Smith in July or August 1982. The modified promissory note was signed by Mr. Wilder but had no signature date. The originals of all transaction documents were retained in the records of Southern and have since been disorganized and in many instances lost due to multiple lawsuits, foreclosures, and audits in which Consolidated has been involved. The partnership agreement required that funds from subscriptions be held in escrow until subscriptions of at least $ 800,000 were received and partners with commitments to make initial capital contributions of $ 800,000 were admitted to the partnership. The commencement date of business of the partnership was *736 stated in the partnership agreement to be October 31, 1982. Listed on Schedule A attached to the partnership agreement under the name "Consolidated Cable II, Ltd." are the names and "Ownership Contributions" of a number of persons and entities. The total "Ownership Contributions" shown is $ 1,307,500. Of the persons and entities listed, the following with the "Ownership Contributions" shown never became partners in Consolidated: D & J Cable Company
$  50,000
Lindy Cable Company
30,000
Sparks Cable Company
100,000
True Cable Company
60,000
Consolidated Cable II, Ltd.
95,000
$ 335,000
The partnership agreement provided that if, by the close of business on the commencement date, limited partners having commitments to make initial capital contributions in the amount of at least $ 800,000 had not been admitted to the partnership, the partnership would dissolve and subscription funds would be returned to the respective subscribers. Also, by the terms of the partnership agreement, the general partner was to enter into equipment purchase and franchise agreements on behalf of the partnership as soon after the commencement date as possible. On September 24, 1982, Mr. *737 Wilder filed on behalf of the partnership an application for taxpayer identification number stating under the printed item "Date you acquired or started this business," September 1, 1982. The partnership information return Form 1065 filed for the partnership for the year ending December 31, 1982, showed under the printed words "Date business started," "9/82." On the partnership return of income for the year 1982 accrued interest was deducted for 6 months. On this return the depreciation deduction was improperly computed claiming a deduction for one-third of the yearly amount allowable. In 1986, Consolidated filed a return reporting a sale of assets stated to have been placed in service on September 1, 1982. Consolidated transferred $ 90,000 to UCC by wire transfer on September 29, 1982. The check register of Consolidated shows that on October 15, 1982, $ 661 received from UCC, which was labeled "Sept. revenue," was deposited in the partnership's operating account. The records of Consolidated indicate that the first payment of a capital contribution was reported on September 20, 1982. The partnership audit and litigation provisions were enacted in the Tax Equity and Fiscal *738 Responsibility Act 1982 (TEFRA), Pub. L. 97-248, 96 Stat. 324. See also H. Rept. 97-760 (Conf.), at 599 (1982), 1982-2 C.B. 600, 662. Prior to the enactment of these provisions, any deficiency determination that involved items of income, loss, deduction, or credit of a partnership was made for each partner in conjunction with determining the proper tax treatment of all other items on his individual Federal income tax return. Each partner's tax liability was determined independently of the determination of any other partner's tax liability, even though an identical item might be involved. By enacting partnership audit and litigation procedures, Congress provided a method for uniformly adjusting items of partnership income, loss, deduction, or credit that affect each partner. The TEFRA partnership audit and litigation procedures apply to partnership taxable years beginning after September 3, 1982, and to any partnership taxable year ending after September 3, 1982, if the requisite application is made by the partnership, partners, and indirect partners. Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a) 96 Stat. 648. This Court has subject *739 matter jurisdiction to redetermine the tax liability of an individual or corporation if a valid notice of deficiency has been mailed by the Commissioner and the taxpayer to whom it is mailed timely files a petition for redetermination of the deficiency. Rule 13. [1]
*2204 This Court has jurisdiction of a partnership action for readjustment of partnership items when the Commissioner has mailed a valid notice of final partnership administrative adjustment and the tax matters partner or notice partner has filed a petition with the Court within the period specified seeking a readjustment of partnership items. Rule 240(c). The notice of final partnership administrative adjustment is to the litigation of *740 partnership items the equivalent of the statutory notice of deficiency in other cases. It is the notice given to affected taxpayer-partners of respondent's final administrative adjustment for specific partnership tax years. Issuance of a notice of final partnership administrative adjustment is a prerequisite to an assessment against a partner of deficiency in tax arising out of partnership items or affected items. Sec. 6225(a). If the notice is not valid, this Court lacks subject matter jurisdiction. Clovis I v. Commissioner, 88 T.C. 980 (1987); Maxwell v. Commissioner, 87 T.C. 783, 788-789 (1986). Petitioner contends that this Court lacks jurisdiction because the notice of final partnership administrative adjustment is invalid. In support of this contention, petitioner argues that the partnership taxable year began before September 4, 1982, when the TEFRA provisions became effective. Respondent contends that the notice of final partnership administrative adjustment is valid. In support of his contention, respondent argues that the partnership taxable year began after September 3, 1982, when the TEFRA provisions became effective, that the *741 notice of final partnership administrative adjustment is the correct means of determining the tax treatment of partnership items, and, therefore, this Court has jurisdiction. The parties disagree as to who has the burden of proof to establish when the taxable year of the partnership began. Petitioner argues that respondent has the burden of proof and respondent argues that petitioner has the burden of proof. Petitioner asserts that in all Federal courts, including the Tax Court, the burden to show subject matter jurisdiction is on the party who contends that the Court has jurisdiction. Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701-702 (1982); Lackawanna Refuse Removal, Inc. v. Proctor and Gamble Paper Products Co., 86 F.R.D. 330, 332 (M.D. Pa. 1979). Petitioner quotes the following statement from the Ninth Circuit Court of Appeals: While the Tax Court is an Article I court, 26 U.S.C. sec. 7441 (1982), the few cases discussing the differences between the Tax Court and an Article III court indicate that questions of Tax Court jurisdiction are to be resolved in the same manner *742 as for an Article III court. See Anthony v. Commissioner, 66 T.C. 367 (1976) (Article III standing principles apply to Tax Court); Roderick v. Commissioner, 57 T.C. 108 (1971) (Tax Court will not issue advisory opinion). Congress has granted the Tax Court very narrow, limited jurisdiction. See Handeland, 519 F.2d 327, 329 (9th Cir. 1975) (Tax Court jurisdiction severely limited by Congress and does not allow declaratory judgments); Continental Equities, Inc. v. Commissioner, 551 F.2d 74, 79 (5th Cir. 1977) (Tax Court cannot order refund). The approach of these cases suggests that this court should review the Tax Court's exercise of jurisdiction as it would review an Article III court's exercise of jurisdiction. * * * Clapp v. Commissioner, 875 F.2d 1396, 1399 (9th Cir. 1989), affg. an Order of this Court. In the Clapp case the Court of Appeals sustained this Court's denial of taxpayers' motion to dismiss for lack of subject matter jurisdiction holding that, since the notice of deficiency issued to the taxpayers was valid, this Court had subject matter jurisdiction. In *743 its analysis of the case the Court of Appeals stated that where it is shown that a valid notice of deficiency is issued and a timely petition filed, giving this Court subject matter jurisdiction, the burden of proof to show error in the determination is on the taxpayer. Petitioner argues that the provision of Rule 240, which states as a jurisdictional requirement that a notice of final partnership administrative adjustment must have been issued, places the burden on respondent to establish subject matter jurisdiction. Here the parties agree that respondent did, in a procedurally proper manner, timely mail to the partnership a notice of final partnership administrative adjustment. From this notice a timely and proper petition was filed. Since the notice is valid on its face and a timely petition has been filed from the notice, the burden is on petitioner to show any error in respondent's determination, including error, if any, in respondent's determination that the partnership commenced at a date which brings it within the TEFRA provisions. Pearce v. Commissioner, 95 T.C. (1990); Campbell v. Commissioner, 90 T.C. 110 (1988). *744 Except with consent of the partners, TEFRA provisions (sec. 6221 et seq.) apply to partnership taxable years beginning after September 3, 1982. The date the taxable year of a new partnership commences is the date it is formed. *2205 Sparks v. Commissioner, 87 T.C. 1279, 1282 (1986). The date a partnership is formed for tax purposes is determined under Federal tax law, not State law. Commissioner v. Tower , 327 U.S. 280 (1946); Frazell v. Commissioner, 88 T.C. 1405, 1412 (1987); Sparks v. Commissioner, supra.For Federal tax purposes, a partnership is formed when the parties to a venture join together capital or services with the intent of conducting presently an enterprise or business. Commissioner v. Culbertson, 337 U.S. 733, 742 (1949); Frazell v. Commissioner, supra; Sparks v. Commissioner, supra.A partnership is deemed formed on the date the first parties to the venture acquired their respective capital interests in the partnership. Sparks v. Commissioner, supra.The determination *745 of when a partnership is formed is a factual issue. Based on the record in this case, we conclude that Consolidated was not formed prior to September 4, 1982. The only transactional document of the partnership with a date prior to September 4, 1982, was the partnership agreement. Petitioner contends that this agreement was not a final agreement. The evidence shows that some persons listed therein as limited partners never became partners in the partnership. Although Mr. Wilder claims to have signed on behalf of the limited partners under powers of attorney, no such powers of attorney are in the record nor does the record show how certain stated limited partners never became partners if the partnership agreement was properly signed on their behalf. The commencement of business date shown in the partnership agreement is October 1982. Petitioner contends that it was intended that a revised agreement be drafted. However, there is no evidence in this record of any such revised agreement having been signed and in April 1983 the partnership agreement signed under date of September 1, 1982, was filed with the Secretary of State of the State of Texas. There is no evidence of any binding *746 subscription agreement of the limited partners executed prior to September 1, 1982. The only purported subscription statement is schedule A attached to the partnership agreement signed by Mr. Wilder. The record does not contain any document granting Mr. Wilder authority to bind any limited partner to a subsequent agreement. No documents are in the record that would establish that on September 1, 1982, the partnership presently intended to conduct business. The partnership information return lists a starting date for business of September 1982. This does not establish that the partnership began doing business on or before September 3, 1982. An application for taxpayer identification number listing a starting date of the partnership of September 1, 1982, is not sufficient evidence to establish that September 1, 1982, was the date the partnership started business. Certain statements on the partnership information return which petitioner contends support a starting date prior to September 4, 1982, are likewise insufficient to establish that the partners had presently joined together capital or services with the intent of conducting an enterprise or business before September 4, 1982. *747 The weight of the evidence such as the provisions of the partnership agreement indicate that the partnership was not formed until after September 3, 1982. Although Consolidated transferred funds to and received funds from United Cable Company in the latter part of September 1982 (after September 3), the record does not show the basis of the transfers. Since the record contains no agreements between Consolidated and UCC for franchise rights or equipment, no date of acquisition of such rights or equipment is shown in the record. On the basis of this record, we hold that the partnership's 1982 taxable year began after September 3, 1982. Petitioner argues that if the partnership did not begin on or before September 3, 1982, it did not begin during the 1982 calendar year. Petitioner asserts that because respondent has alleged in his notice of final partnership administrative adjustment for 1982 that Consolidated lacked profit motive, economic substance, and a business purpose, it is not a partnership for Federal income tax purposes. If a partnership information return is filed by an entity *748 for a taxable year, the partnership audit and litigation procedures apply, regardless of whether or not the entity is a partnership. Sec. 6233(a). Accordingly, because Consolidated's partnership taxable year began after September 3, 1982, and it filed an information return for 1982, the partnership audit and litigation procedures apply. Petitioner's motion to dismiss this case for lack of jurisdiction is denied. An appropriate order will be entered. Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩