1998-NMCA-165

967 P.2d 1172

**Jan M. WISTE, Plaintiff–Appellant,**

v.

**NEFF AND COMPANY, CPA and Robert E. Bivins, Defendants–Appellees.**

**No. 18,770.**

Court of Appeals of New Mexico.

Sept. 8, 1998.

Certiorari Denied, No. 25,393, Nov. 4, 1998.

David A. Freedman, Freedman, Boyd, Daniels, Hollander, Guttman & Goldberg, P.A., Albuquerque, for Appellant.

Clifford K. Atkinson, Atkinson & Thal, P.C., Albuquerque, for Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} This appeal arises from a grant of summary judgment dismissing, on statute of limitation grounds, Plaintiff's professional negligence suit against her former accountant and accounting firm. Determining that Plaintiff's cause of action accrued when the limited partnership in which she had invested, on Defendants' advice, received its final administrative notice from the Internal Revenue Service (IRS), we affirm.

### BACKGROUND

{2} Plaintiff Jan Wiste (Plaintiff) and her then-husband, Ron Thomas (Thomas), are physicians. Defendant Neff and Company (Neff) is a certified public accounting firm and Defendant Bivins is an accountant who was employed by Neff during the time at issue. Plaintiff and Thomas retained Bivins to provide tax advice and to prepare their tax returns for 1982, 1983, 1984, and 1985. Plaintiff alleges she and Thomas invested in a limited partnership, Barrister Equipment Associates Series 94 (Barrister), on Bivins' recommendation. Plaintiff's 1982 and 1983 tax returns reflected this investment.

{3} On November 27, 1985, the IRS notified Plaintiff that it was auditing the Barrister partnership tax returns and that her personal tax liability might be affected. The IRS asked Plaintiff to voluntarily extend the limitation period for her tax returns, which she did.

{4} In March 1989, Barrister and the IRS notified Plaintiff of a proposed settlement with Barrister, informing her that she had the option of agreeing to the settlement. The IRS notice advised Plaintiff that if she did not settle, she would receive a notice of Final Partnership Administrative Adjustment (FPAA). The FPAA would, among other things, allow her to file a petition in the United States Tax Court.

{5} Plaintiff received the FPAA dated August 21, 1989, notifying her that she could settle with the IRS, that the Barrister "tax-matters partner" had 90 days to file a petition for readjustment, and that if the tax-matters partner did not do so, Plaintiff could file a petition for readjustment. The tax-matters partner filed a petition for adjustment in the Tax Court in November 1989. On February 17, 1995, the Tax Court ruled in favor of the IRS, and thereafter Plaintiff received notices from the IRS that she owed taxes, interest, and penalties for the 1982 and 1983 tax years. Specifically, she received a notice of assessment on April 22, 1996, and a notice of deficiency on May 3, 1996. The IRS determined that Plaintiff's and Thomas' deficient tax liability for 1982 and 1983 was $34,918.00. The IRS also assessed interest of $115,122.11 and penalties of $57,443.71 for a total liability of $207,483.82. On the basis of this liability, Plaintiff filed suit against Defendants for professional negligence. (Note that we use the terms "professional negligence" and "malpractice" interchangeably. See Chisholm v. Scott, 86 N.M. 707, 708, 526 P.2d 1300, 1301 (Ct.App.1974).) Defendants moved for summary judgment, claiming that Plaintiff's suit was barred by the statute of limitations. After a hearing, the district court granted Defendants' motion and dismissed Plaintiff's complaint.

### DISCUSSION

**Standard of Review**

{6} Summary judgment may be granted where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. See, e.g., Koenig v. Perez, 104 N.M. 664, 665, 726 P.2d 341, 342 (1986). In deciding whether the district court's grant of summary judgment was proper, the reviewing court looks to the record as a whole to determine if any genuine issues of material fact exist. See id. at 666, 726 P.2d at 343. Where none exist, we will conduct a de novo review of the district court's ruling to ascer-

tain whether summary judgment was properly granted. *See Harger v. Structural Servs., Inc.,* 1996–NMSC–018, 121 N.M. 657, 666, 916 P.2d 1324, 1333.

### Accrual of a Professional Negligence Cause of Action

{7} The facts are not disputed in this case. The legal question at issue is when did Plaintiff's cause of action accrue for limitation purposes. The limitation period in an accountant malpractice action is four years. *See* NMSA 1978, § 37–1–4 (1880); *Chisholm,* 86 N.M. at 708, 526 P.2d at 1301. Plaintiff filed her malpractice action on July 19, 1996. Therefore, her claim for alleged professional negligence against her accountants must have accrued after July 19, 1992, or it is barred by the statute of limitations and summary judgment was properly granted. We hold that Plaintiff's cause' of action accrued when the IRS issued its FPAA notice on August 21, 1989.

{8} Our Supreme Court has established a two-prong test to ascertain when an attorney malpractice cause of action accrues. *See Sharts v. Natelson,* 118 N.M. 721, 724, 885 P.2d 642, 645 (1994). The same test applies in cases of accountant malpractice. *See LaMure v. Peters,* 1996–NMCA–099, ¶¶ 16–18, 122 N.M. 367, 924 P.2d 1379. A professional negligence cause of action accrues, and the limitation period begins to run, when the client sustains an "actual injury" and "the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Sharts,* 118 N.M. at 724, 885 P.2d at 645. This Court recently appeared to conflate the knowledge and injury prongs of the cause of action in accountant malpractice cases. *See LaMure,* 1996–NMCA–099, ¶ 18, 122 N.M. 367, 924 P.2d 1379. We take this opportunity to restate that each prong must be met individually, although we note that the prongs can be met simultaneously.

{9} Plaintiff does not dispute that she learned the facts essential to the cause of action more than four years before filing her lawsuit. She thus concedes that the discovery prong was met more than four years before she filed. However, she contends that

she did not sustain an actual injury until February 17, 1995, at the earliest, when the Tax Court reached its decision, or until April 22, 1996, when she received an assessment from the IRS based on the Tax Court decision. Specifically, Plaintiff contends that the IRS FPAA notice does not constitute actual injury to her because of the "unique characteristics of limited partnerships." New Mexico has not previously addressed whether an FPAA notice to a limited partnership constitutes actual injury to a limited partner. We do so now.

{10} New Mexico law recognizes that in an accountant negligence cause of action, the client's injury accrues when an assessment of tax deficiency is issued by the IRS. *See Chisholm,* 86 N.M. at 709, 526 P.2d at 1302; *LaMure,* 1996–NMCA–099, ¶ 18, 122 N.M. 367, 924 P.2d 1379. It is upon the receipt of this notice that there has been "the loss of a right, remedy, or interest," or that liability has been imposed. *LaMure,* 1996–NMCA–099, ¶ 18, 122 N.M. 367, 924 P.2d 1379 (internal quotation marks and citations omitted). It is not necessary that the client know the extent of the tax liability for injury to have occurred. *See Sharts,* 118 N.M. at 725, 885 P.2d at 646. For the reasons set out below, we hold that receipt of the FPAA is the functional equivalent of receipt of an individual IRS tax deficiency notice and constitutes actual injury to a partner in a limited partnership.

### The Nature of Partnership Taxation

{11} In order to understand why an FPAA notice is the equivalent of a notice of tax deficiency, it is helpful to understand the nature of partnership taxation. Partnerships do not pay taxes; rather the tax burden (or benefit, as the case may be) is borne by the partners. *See* L. Glenn Worley, *The Tax Treatment of Partnership Items Act of 1982; Pragmatic Procedures for Determining Partners' Shares of Partnership Income,* 14 Memphis State. U.L.Rev. 1, 2–3 (1983); *see also Kaplan v. United States,* 133 F.3d 469, 471 (7th Cir.1998). The partnership files an information return which reports items of income, deduction, and credit. *See Kaplan,* 133 F.3d at 471. Those items are then allo-

cated among the partners. *Id.* Prior to September 3, 1982, adjustment to these items was conducted by the IRS on a partner-by-partner basis. *See Crnkovich v. United States,* 41 Fed.Cl. 168, 170 (Fed.Cl.1998). But Congress changed this approach when it enacted the Tax Equity and Fiscal Responsibility Act (TEFRA) in 1982. *See, e.g., Kaplan,* 133 F.3d at 471.

{12} Under TEFRA, adjustments are handled partnership-wide between the IRS and a partner who is designated the tax-matters partner. *See Crnkovich,* 41 Fed.Cl. at 170. TEFRA procedures were designed to benefit the taxpayer-partners and the government. Partners benefit in receiving "equal treatment ... by uniformly adjusting [their] tax liabilities and channeling any challenges to these adjustments into a single, unified proceeding." *Kaplan,* 133 F.3d at 471 (citing Staff of the Joint Committee on Taxation, 97th Cong., 2d Sess., General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268). The government benefits in reducing its administrative burden by eliminating "multiple, duplicative audits and lawsuits involving numerous partners in a single partnership." *Id.*

{13} TEFRA provisions apply to all taxable years of a partnership, starting on September 3, 1982. *See Callaway v. Commissioner,* 75 T.C.M. (CCH) 1956 (1998). Because the tax years at issue in this appeal are 1982 and 1983, Barrister was controlled by TEFRA provisions, a fact apparently known to Plaintiff.

{14} Under the TEFRA provisions, adjustments to the items reported on the partnership form are reported to the tax-matters partner and all partners owning at least one percent as defined in the FPAA. *See Kaplan* 133 F.3d at 471; *see also Crnkovich,* 41 Fed.Cl. at 170. The tax-matters partner may "petition for judicial review of the FPAA in either the Tax Court, the Court of Federal Claims, or federal district court[.]" *Monti v. United States,* 976 F.Supp. 157, 158 (E.D.N.Y.1997) (citing 26 U.S.C. § 6226(a)). In the absence of action by the tax-matters partner, any other partner may file a petition for readjustment. *See id.* At the end of the

prescribed statutory period, if no action is taken, "the tax treatment of the partnership item in issue in the FPAA is conclusively established." *Id.*

{15} Because of the nature of partnership taxation, the individual partners are directly affected by an IRS adjustment to the partnership return, and the partners are bound by the outcome of the partnership audit. Thus, issuance of an FPAA is of more than academic interest to the partners. The adjustments noted in an FPAA represent more than mere potential injury to the partner. They provide the same information, and represent the same threat, as an individual assessment.

{16} Plaintiff contends that the FPAA notice differs from a notice of deficiency in that a deficiency notice requires the individual taxpayer to take action to preserve her tax return position, whereas the FPAA requires the partnership to take action to preserve its tax position. This contention, however, is not entirely accurate. As discussed, the non-taxpaying partnership's position and the taxpaying partner's position are coextensive and, in fact, of more personal concern to the partners. This personal concern of the partners is reflected by the FPAA's notice that another partner may take action when the tax-matters partner takes none. No impermeable barrier exists between the non-taxpaying partnership and taxpaying partnership. For these reasons, the FPAA is the functional equivalent of a notice of tax deficiency to an individual taxpayer. *See, e.g. First Blood Assoc. v. Commissioner,* 75 T.C.M. (CCH) 2565 n. 5, 1998 WL 341844 (1998).

{17} The United States Tax Court has similarly found that an FPAA notice is the equivalent of a notice of tax deficiency. *See Consolidated Cable Ltd. v. Commissioner,* 60 T.C.M. (CCH) 1546, 1990 WL 212866 (1990). There, the Tax Court held that

notice of final partnership administrative adjustment is to the litigation of partnership items the equivalent of the statutory notice of deficiency in other cases. It is the notice given to affected taxpayer-partners of [the IRS]'s final administrative ad-

justment for specific partnership tax years. Issuance of a notice of final partnership administrative adjustment is a prerequisite to an assessment against a partner of deficiency in tax arising out of partnership items or affected items.

*Id.*

### Limited Partners are not Exempt From Agency Rules as to Partnerships

{18} Plaintiff also argues that because she was a limited partner, IRS notice to the partnership was not effective as notice to her. We are not persuaded. In New Mexico, partnerships are governed by the Uniform Partnership Act (UPA), NMSA 1978 §§ 54–1–1 to –46, –48 (1947) *repealed by* NMSA 1978 §§ 54–1A–101 to –1206 (effective July 1, 1997). (We note that Plaintiff's litigation was pending while the now-superseded version of the UPA was in force. Accordingly, unless otherwise appropriate, this opinion will cite to the UPA in effect at the time of Plaintiff's action.) Limited partnerships are governed by the Uniform Limited Partnership Act (ULPA), NMSA 1978, Sections 54–2–1 to –63 (1988). In the absence of a ULPA provision, provisions of the UPA shall govern. *See* § 54–2–62. It is a principle of common-law "enshrined in the Uniform Partnership Act[,] that each general partner is an agent of all partners, and notice to one partner is notice to all." *Walthall v. United States,* 911 F.Supp. 1275, 1282 (D.Alaska 1995); *See National Labor Relations Bd. v. Broad St. Hosp. & Med. Ctr.,* 452 F.2d 302, 304 n. 1 (3d Cir.1971) (stating that " '[w]ell established concepts of partnership doctrine impute the knowledge and actions of one partner to all others' " quoting *Friend v. H.A. Friend & Co.,* 416 F.2d 526, 533 (9th Cir.1969)); *Heather Cos. v. Amano (In re Heather Cos.),* 36 B.R. 863, 866 (Bankr. N.D.Ill.1984) (citing the Restatement (Second) of Agency § 14A (1958) for the proposition that notice to one partner constitutes notice to the partnership).

{19} The distinguishing characteristics of a limited partnership is that limited partners do not participate in the control of the enterprise and are not liable for the obligations of the partnership. *See* § 54–2–

20(A) and (B). However, notice to a general partner regarding partnership business binds the limited partners. *See Walthall,* 911 F.Supp. at 1282 n. 9; *Zola v. Gordon,* 685 F.Supp. 354, 371 (S.D.N.Y.1988); *Engl v. Berg,* 511 F.Supp. 1146, 1154 (E.D.Pa.1981); *BMS Partnership v. Winter Park Devil's Thumb Inv. Co.,* 910 P.2d 61, 63 (Colo.Ct. App.1995); *Howard v. Hamilton,* 28 N.C.App. 670, 222 S.E.2d 913, 917 (N.C.Ct. App.1976).

{20} Plaintiff received an FPAA notice from the IRS dated August 21, 1989. This is the date her cause of action accrued and the limitation period began. To be timely, she would have had to file a malpractice action within four years of that date, by August 21, 1993. Because she filed her complaint after that date, her cause of action is barred by the statute of limitations.

### CONCLUSION

{21} For the reasons stated, we affirm the grant of summary judgment and dismissal of Plaintiff's complaint. Defendants are awarded their costs on appeal.

{22} **IT IS SO ORDERED.**

ALARID, J., concurs.

BOSSON, J., specially concurring.

BOSSON, Judge, specially concurring.

{23} I support unequivocally the opinion of the Court because it represents application of settled New Mexico law to the facts of this case. I write separately only to voice my own dissatisfaction with the actual injury analysis in *Sharts v. Natelson,* 118 N.M. 721, 885 P.2d 642 (1994), for all the reasons pursued unsuccessfully in that case, including the undesirable social consequence of encouraging premature and avoidable litigation at the risk of having one's injury "accrue." But whether for good or for ill, Chief Justice Montgomery's commanding presence in *Sharts* has swept aside any contrary voice; it is law of the land and we must follow it. Once past that point, I can easily agree that

the attempts in this appeal to distinguish
*Sharts* are not persuasive.