2003-NMCA-143

82 P.3d 42

**HAAS ENTERPRISES, INC., a New Mexico Corporation, Plaintiff–Appellant,**

v.

**Bruce DAVIS; B.J. Davis, D.O., P.C., a New Mexico Corporation; and B.J. Davis, individually, Defendants–Appellees.**

No. 22,923.

Court of Appeals of New Mexico.

Sept. 24, 2003.

Robert A. Johnson, Stephen R. Nelson, Johnson & Nelson, P.C., Albuquerque, NM, for Appellant.

Robert J. Muehlenweg, Shari L. Sterud, Michael J. Thomas, Kelly, Rammelkamp & Muehlenweg, P.A., Albuquerque, NM, for Appellees.

## OPINION

KENNEDY, Judge.

{1} The issue we address here is: When did the statute of limitations in this accountant's malpractice case begin to run? Haas Enterprises, Inc. sued Bruce Davis on an unsecured promissory note. Bruce, his father Dr. B.J. Davis, and Dr. Davis's medical practice, Davis P.C., in turn filed a counterclaim and third-party complaint against Haas Enterprises for its failure to file certain tax returns on its behalf for a number of years.[1] Haas Enterprises then defended on the basis that the statute of limitations had run on the claim.

{2} The district court found for the Davises, based on case law that draws a bright-line at the moment the client receives notice of tax deficiency from the IRS to establish when a client discovers the injury as well as the right to a cause of action for accountant malpractice. The district court thus allowed the Davises' claims to proceed. The Davises obtained a judgment. Haas Enterprises filed a timely appeal.

1. Mr. Haas is deceased; the initial action was brought in the name of his firm Haas Enterprises. Dr. Davis, Haas's client, assigned 50% of his third-party claims for malpractice to his son Bruce Davis after Bruce was sued by Haas Enterprises on his promissory note. Bruce counterclaimed as per his interest. The distinction between individuals, counterclaimants, and third-party plaintiffs in this case is not material, save for detail; unless distinction is necessary, we refer to Dr. Davis, Bruce Davis, and Davis P.C. as the Davises.

{3} We hold that a notice of deficiency or equivalent IRS document is not the sine qua non of discovering an injury and the existence of a cause of action for accountant malpractice. In this case, the statute of limitations began to run when Dr. Davis acquired knowledge that his tax returns, which he had paid Haas Enterprises to file for a number of years, had not been filed. That date was almost a year earlier than any IRS notice of deficiency was issued; the statute of limitations had run, and we reverse the district court.

## FACTS AND BACKGROUND

{4} Ferris Haas ran a bookkeeping and accounting practice for many years as Haas Enterprises. He prepared the books and took care of tax matters for Dr. Davis personally and for Davis P.C. since the late 1970's. The relationship was personally close, as Mr. Haas loaned money to both Dr. Davis and Bruce. One of these loans to Bruce was secured by a promissory note, which is the subject of Haas Enterprises' lawsuit.

{5} Dr. Davis had given Mr. Haas authority by power of attorney to deal with taxing authorities firsthand on his behalf. Mr. Haas took care of the month-to-month needs of Dr. Davis's practice, such as gross receipts tax payments and employee withholding taxes. Mr. Haas could sign returns for Dr. Davis, and tax-related correspondence was sent to Haas Enterprises' address. Dr. Davis would provide Haas Enterprises with blank checks to pay taxes owed, and to pay Haas Enterprises for accounting services, all of which would be executed by Mr. Haas.

{6} Mr. Haas died in August 1995. Upon Mr. Haas's death, on October 24, 1995, Dr. Davis retained Jennifer Cantrell, a certified public accountant, on October 24, 1995, to take over his bookkeeping and accounting. Part of their contract stated that it was Dr. Davis's belief at that time that no bookkeeping or tax returns for the medical practice had been prepared or filed since 1984.

{7} Because Dr. Davis tried to run his practice as a "zero corporation," meaning that he attempted every year to have no corporate taxable income, he did not question Mr. Haas's accounting practices during the years he was not paying corporate taxes. Dr. Davis also testified that he usually received a refund on his personal taxes when he did file, so he did not think he owed any personal taxes. The district court found that Dr. Davis "knew that Haas had not prepared and filed [his] individual income [tax] returns for the years 1991, 1992, 1993 and 1994." In July 1996, assessment of liability for penalties and interest for Dr. Davis's personal taxes was issued. During the fall of 1996 and early 1997, Dr. Davis learned that there would be corporate taxes and penalties owed.

{8} Haas Enterprises sued on the promissory note in February 2000; the counter-claim and third-party complaint were filed on March 27, 2000, for Haas Enterprises' malpractice. The district court found that prior to December 2, 1996, when federal tax returns were filed for Davis P.C., Dr. Davis had "no notice of any injury as a result of Haas' failure to file corporate income tax returns" and concluded that the Davises' claims were timely under the four-year statute of limitations.

## DISCUSSION

### Standard of Review

 {9} When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts. *Inv. Co. of the S.W. v. Reese*, 117 N.M. 655, 657, 875 P.2d 1086, 1088 (1994). We review questions of law de novo. *Sowder v. Sowder*, 1999–NMCA–058, ¶ 7, 127 N.M. 114, 977 P.2d 1034. It is undisputed in this case that the applicable statute of limitations is four years. NMSA 1978, § 37–1–4 (1880).

### Two–Prong Test for Accrual of Action for Professional Malpractice

 {10} New Mexico has a two-prong test to determine when an accountant malpractice action accrues. The test is based on the formula adopted by our Supreme Court for attorney malpractice. *Sharts v. Natelson*, 118 N.M. 721, 724, 885 P.2d 642, 645 (1994); *LaMure v. Peters*, 1996–NMCA–099, ¶¶ 16–18, 122 N.M. 367, 924 P.2d 1379 (con-

cluding that the two-prong test established to ascertain when an attorney malpractice cause of action accrues applies in cases of accountant malpractice). The limitation period begins to run, and the accountant malpractice cause of action accrues when the client sustains an "actual injury," and when "the client discovers, or through reasonable diligence should discover, the facts essential to the cause of action." *Wiste v. Neff & Co.*, 1998–NMCA–165, ¶ 8, 126 N.M. 232, 967 P.2d 1172 (internal quotation marks and citation omitted). Although the prongs may be met simultaneously, each must be satisfied individually. *Id.*

{11} Here, the Davises argue that without formal action by the IRS establishing a tax deficiency, no event triggering the statute of limitations could have occurred until the IRS rendered its assessment in mid to late 1996. This argument is consistent with New Mexico accountancy malpractice cases from *Chisholm v. Scott*, 86 N.M. 707, 709, 526 P.2d 1300, 1302 (Ct.App.1974) through *LaMure*, 1996–NMCA–099, ¶ 18, 122 N.M. 367, 924 P.2d 1379, in which we have held that the two-prongs of the test to determine accrual of an accountant malpractice cause of action is satisfied by the issuance of an IRS tax deficiency notice. *LaMure* instructs us that accountancy malpractice actions accrue when there is a notice of deficiency issued by the IRS, thus creating injury "and not before." *Id.* ¶ 14. Receiving the notice of deficiency functions simultaneously as the injury itself and notice to the client of the injury. *Id.* ¶ 18.

{12} This said, we have previously held that knowing the extent of the tax liability is not necessary to determining when the injury has occurred. *See Wiste*, 1998–NMCA–165, ¶ 10, 126 N.M. 232, 967 P.2d 1172. In *Wiste*, this Court held that receipt of a Final Partnership Administrative Adjustment (FPAA) stating that taxes were owed from an interest in a limited partnership was the functional equivalent of a deficiency notice and satisfied the discovery requirement. *Id.* Receipt of such a notice established the fact that the client had suffered "the loss of a right, remedy, or interest, or that liability ha[d] been imposed" sufficient to satisfy the discovery

prong. *Id.* (internal quotation marks and citation omitted).

{13} Thus, our courts have selected certain events as bright-line spots at the occurrence of which "people should know that they are injured by accountant malpractice." *LaMure*, 1996–NMCA–099, ¶ 15, 122 N.M. 367, 924 P.2d 1379; *Chisholm*, 86 N.M. at 709, 526 P.2d at 1302. The reason for waiting for injury to "accrue" is simply that injury may not be apparent at the time the negligent act itself is committed. Often, only IRA action against the taxpayer makes the injury apparent. *LaMure*, 1996–NMCA–099, ¶ 17, 122 N.M. 367, 924 P.2d 1379; *see also Chisholm*, 86 N.M. at 709–10, 526 P.2d at 1302–03. To insist on accrual of the cause of action at the time the negligent act was committed could result in the statute of limitations running before the injury was ever discovered, resulting in an injustice. *See Jaramillo v. State*, 111 N.M. 722, 726, 809 P.2d 636, 640 (Ct.App. 1991).

{14} The calculus in these cases assumes that the tax laws and tax accounting may well be beyond the ken of the taxpayer. *La Mure*, 1996–NMCA–099, ¶ 17, 122 N.M. 367, 924 P.2d 1379; *Chisholm*, 86 N.M. at 709, 526 P.2d at 1302 ("A person needs special training to know whether his tax return has been erroneously prepared."). In this context, a bright-line is useful, but need not be exclusive.

{15} We have previously stated that we regard the discovery rule as "the underlying basis of the *Chisholm* holding, *despite* its bright-line selection of the deficiency notice as the time that people should know that they are injured by accountant malpractice." *LaMure*, 1996–NMCA–099, ¶ 15, 122 N.M. 367, 924 P.2d 1379 (emphasis added). Thus, the essential question is when people should know that they are injured, irrespective of any single bright-line. As we stated in *LaMure*, "[f]or purposes of determining when the statute of limitations began to run, we are concerned only with the point at which the [plaintiffs] knew or should have known that they were damaged by [defendant's] malpractice." *Id.* ¶ 23. The earlier line of cases deals with returns prepared badly and a resulting tax deficiency. It was reasonable

in those cases to wait to ascertain whether an injury has occurred and how bad it was. However, the general rule applied to actions for negligent or improper preparation of tax returns is not applicable here. This case deals with returns that were never prepared at all, and actual injury and its discovery may be determined in other ways.

### When no Tax Return is Filed, the Injury and its Discovery may be Determined in Other Ways

{16} In this case, Dr. Davis contracted for the preparation of tax returns, paid for their preparation, and knew for some time that they had not been prepared. Dr. Davis knew that his corporate tax returns had not been filed for eleven years, and that it was Haas Enterprises' obligation to file them. He also knew that corporate returns were to be filed in September 1995, within three months of the end of his business' fiscal year on June 30. Failing to file when one personally knows the deadline has been held not to be a problem attributable to one's accountant. *United States v. Kroll,* 547 F.2d 393, 396 (7th Cir.1977).

{17} In October 1995, Dr. Davis knew he had not signed personal returns for the last five cycles. His wife even questioned him regarding whether his personal income taxes had been filed. Dr. Davis testified that as of October 21, 1995, his new accountant advised him that no corporate returns had been prepared since 1984. Knowing this, for Dr. Davis to seek to wait for an IRS notice of deficiency based on a return filed in 1996 is struthious. It strains logic to insist on waiting for a notice of tax deficiency before one can tell an accountant has committed malpractice, when one knows for a fact that the accountant has not filed a tax return for as many as eleven years.

{18} The Pennsylvania Supreme Court castigated estate administrators for "supine negligence" in failing to ascertain the date for filing of tax returns despite having counsel, and made the following observations:

A prudent man may not have the technical knowledge or skill to prepare ... an income tax return, and so would properly rely on one more knowledgeable. But a prudent man in the conduct of his own affairs would certainly know that there is A[sic] time when a tax return must be made and a time when a tax is due and payable, and, if he did not know what those times were, he would find out.... What 'prudent man' is there who does not know that April 15 is the normal date by which individual federal income tax returns must be filed and the tax paid?

*In re Estate of Lohm,* 440 Pa. 268, 269 A.2d 451, 455–56 (1970). Dr. Davis presents us with the same situation. The contention that "there was no actual injury to Dr. Davis or Davis, P.C. until at least July 1996" when there was an assessment of liability for penalties and interest for personal taxes has no merit. Although the absence of a tax deficiency notice distinguishes this appeal, *La-Mure* instructs us that in an appropriate case an "actual injury" may take the form of consequential or incidental damages, such as attorney fees or costs incurred as a result of the alleged malpractice. *See LaMure,* 1996–NMCA–099, ¶ 16, 122 N.M. 367, 924 P.2d 1379. Dr. Davis retained a new accountant in October 1995 with the explicit understanding that returns had not been prepared for a number of years. Dr. Davis incurred substantial consequential damages in the form of professional service fees paid to his new accountant. Further, the district court found that Dr. Davis knew Haas Enterprises had not prepared and filed his personal returns from 1991 through 1994. The district court concluded that Haas Enterprises breached its contract to prepare tax returns, failed to provide adequate services, and committed fraud against the Davises. The conclusion that the contract was breached and finding that Haas Enterprises had been paid for the work not done constitute the injury. All of this leaves us no doubt that both the actual injury and discovery of Haas Enterprises' failures were known to Dr. Davis as of October 1995. Dr. Davis "knew what he needed to know." *State v. Cumpton,* 2000–NMCA–033, ¶ 15, 129 N.M. 47, 1 P.3d 429.

### CONCLUSION

{19} We hold that in October 1995, when Dr. Davis retained his new accountant stat-

ing that returns had not been filed since 1988, the statute of limitations began to run. The Davises' claims filed in March 2000 are barred by the running of the statute. The district court's judgment in favor of the Davises is hereby reversed. This case is remanded with instructions for dismissal of the Davises' claims for accountant malpractice as they are barred by the statute of limitations.

{20} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and MICHAEL D. BUSTAMANTE, Judges.