907 P.2d 1010

Alvin G. TULL and Roger C. Blair,
Plaintiffs–Appellants,

v.

CITY OF ALBUQUERQUE,
Defendant–Appellee.

No. 16193.

Court of Appeals of New Mexico.

Sept. 21, 1995.

Ira Bolnick, Fitzpatrick & Bolnick, Albuquerque, for Plaintiffs–Appellants.

Robert M. White, City Attorney, Bruce Thompson and Victor S. Lopez, Assistant City Attorneys, Albuquerque, for Defendant–Appellee.

## OPINION

BLACK, Judge.

Plaintiffs sued the City alleging breach of an employment contract. The district court dismissed the claim, determining that the statute of limitations on Plaintiffs' claim had run and that Plaintiffs' complaint therefore did not state a viable cause of action. Plaintiffs appeal that dismissal. We affirm.

### FACTS

This case was decided pursuant to a motion to dismiss under SCRA 1986, 1–012(B)(6) (Repl.1992). We therefore accept the facts in Plaintiffs' complaint as true. *See California First Bank v. State,* 111 N.M. 64, 66, 801 P.2d 646, 648 (1990). The following are the facts from Plaintiffs' perspective: (1) Plaintiffs are employees of the City; (2) in November 1987, Plaintiffs' job titles and responsibilities were changed from Commercial Building Inspector positions to Building Inspection Supervisor positions; (3) Plaintiffs began performing expanded duties, including managerial and supervisory functions, and were therefore entitled, under the City's Merit System Ordinance, to a raise in salary commensurate with the increased job responsibilities; (4) although Plaintiffs were informed that they would receive a pay raise retroactive to the date their job titles and responsibilities were changed, the City failed or refused to provide Plaintiffs such a pay increase; and (5) Plaintiffs have performed their expanded duties from November 1987 to the present without the additional compensation to which they were entitled.

On June 30, 1994, almost seven years after the change in Plaintiffs' job responsibilities, Plaintiffs filed suit for breach of contract. The district court determined that the three-year statute of limitations applicable to contract claims against a city, NMSA 1978, Section 37–1–24 (Repl.Pamp.1990), began to run when Plaintiffs' duties were changed in November 1987, and dismissed Plaintiffs' complaint as untimely.

### DISCUSSION

Plaintiffs contend that a new breach of contract occurs with each paycheck that does not include the raise to which they were

entitled. Consequently, Plaintiffs maintain that they can recover damages for all paychecks not including such a raise during the three-year period preceding the filing of their complaint and for all paychecks issued since the complaint was filed. Plaintiffs concede, however, that the statute of limitations has run on any paycheck issued prior to June 30, 1991, which was three years before the complaint was filed. We shall term this argument the "continuing-wrong" theory.

The City, on the other hand, maintains there is only one breach of contract alleged, the initial failure, in 1987, to give Plaintiffs a raise in conjunction with their assumption of expanded job duties. For purposes of this appeal, the City accepts the allegation that the initial breach of contract has continuing effects in that each paycheck issued to Plaintiffs is lower than it might otherwise have been if Plaintiffs had received the raise they expected. The City argues, however, that these continuing consequences have no effect on the statute of limitations and that, for limitations purposes, the only triggering event is the initial breach of contract. We refer to this argument as the "single-wrong with continuing effects" theory.

The Plaintiffs' continuing-wrong theory has been applied in a number of cases involving contracts that require periodic payments, including some cases arising in the employment context. Those cases are distinguishable. For example, in *Miller v. Beneficial Management Corp.*, 977 F.2d 834 (3d Cir. 1992), an employee claimed her employer discriminated against her by putting off her request for promotion and eventually denying the request. The court ruled the alleged conduct constituted a continuing wrong. *Id.* at 844. In *Hart v. International Telephone & Telegraph Corp.*, 546 S.W.2d 660 (Tex.Ct. App.1977), an employee sued for commissions allegedly earned under an oral contract that called for quarterly payments of commissions. The court held the plaintiff had a separate cause of action for each quarter of the year in which commissions were earned but not paid. *Id.* at 662.

Here, on the other hand, the allegations would establish that the City committed a single wrong with continuing effects. The

single-wrong approach has received wide support in the employment context. One of the most influential cases to apply this rationale is *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Ricks was a professor at Delaware State College. *Id.* at 252. In February 1973, the Tenure Committee recommended that he not receive a tenured position. *Id.* Upon reconsideration in early 1974, the Committee adhered to its recommendation to deny tenure. *Id.* After a similar vote by the Faculty Senate, the College Board of Trustees voted to deny Ricks' tenure in March 1974. *Id.* Ricks then filed a grievance with the Board's Educational Policy Committee. *Id.* While the grievance was pending, Ricks was offered a one-year "terminal" contract, which he accepted. *Id.* at 253–54, 101 S.Ct. at 501–02. Shortly thereafter, in September 1974, the Board notified Ricks that his grievance had been denied. *Id.* at 254, 101 S.Ct. at 502. Ricks filed a discrimination complaint with the Equal Employment Opportunity Commission (EEOC) and, after receiving a "right to sue letter" from the EEOC, filed suit in federal district court in September 1977. *Id.* The district court found that the complaint alleged only one unlawful employment practice, the decision to deny tenure. *Id.* at 254–55, 101 S.Ct. at 502–03. Because the limitations period on that decision began to run in June 1974, the district court concluded that both the EEOC claim and the district court complaint were untimely. *Id.* at 255, 101 S.Ct. at 502–03. The Court of Appeals for the Third Circuit reversed, reasoning that, because the initial decision to terminate could have been reversed during the subsequent administrative review, the date of Ricks' actual termination was the point at which the statute of limitations commenced. *Id.* at 255–56, 101 S.Ct. at 502–03.

The United States Supreme Court granted certiorari and reversed. *Id.* at 256, 101 S.Ct. at 503. In its opinion, the Supreme Court focused on the alleged act of employment discrimination rather than the continuing effects:

> Determining the timeliness of Ricks' EEOC complaint, and this ensuing lawsuit, requires us to identify precisely the "un-

lawful employment practice" of which he complains. Ricks now insists that discrimination motivated the College not only in denying him tenure, but also in terminating his employment on June 30, 1975. In effect, he is claiming a "continuing violation" of the civil rights laws with the result that the limitations periods did not commence to run until his 1–year "terminal" contract expired. This argument cannot be squared with the allegations of the complaint. Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination.

*Id.* at 257, 101 S.Ct. at 503–04 (citation omitted).

Other courts have specifically rejected the continuing-wrong theory when the plaintiff's complaint is based upon a failure-to-promote claim. *See, e.g., Kyriakopoulos v. George Washington Univ.,* 866 F.2d 438, 443 (D.C.Cir.1989) (failure to cure a previous breach of contract does not constitute a new breach); *Taylor v. General Motors Corp.,* 826 F.2d 452, 456 (6th Cir.1987) (proper focus is upon the time of the failure to promote, not upon the time of the consequences); *Hollinger–Haye v. Harrison Western/Franki–Denys,* 729 F.Supp. 1397, 1399 (D.D.C.1990) (mem.) (denial of a promotion alone does not constitute a continuing violation); *Prouty v. National R.R. Passenger Corp.,* 572 F.Supp. 200, 207 (D.D.C.1983) (mem.) (no continuing wrong where all of plaintiff's allegations stem from defendant's failure to promote). The Indiana Court of Appeals applied the City's single-wrong analysis to similar facts in *Smith v. Beasley,* 504 N.E.2d 1028 (Ind.Ct. App.1987). Effective October 1, 1978, the Indiana State Police implemented a Career Development Merit Increase (CDMI) for employees who had been at the top level within their job classification for at least one year. *Id.* Smith had been at the top level of the trooper classification for four years before he was promoted to sergeant in June 1978. *Id.* Smith filed suit, claiming the denial of a CDMI pay raise was without a rational basis and unconstitutional. *Id.* The trial court granted the defendant's motion to dismiss, finding that Smith failed to file suit within the applicable statute of limitations. *Id.* at

1028–29. On appeal, Smith argued that his reduced earnings were a continuing wrong and the statute of limitations should therefore run from the date each paycheck was received. *Id.* at 1029. The Indiana Court of Appeals rejected this argument, saying:

> We agree Indiana follows the general rule where an obligation is payable in installments, the statute of limitations runs as to each installment as it becomes due. This rule applies to each installment of wages due. However, we do not agree that a continuing wrong occurred here.
>
> The instant case involves a one time paid percentage increase to officers. Smith does not allege CDMI is still in effect. Although the alleged wrong may have a present impact upon his salary, it is not a continuing wrong.

*Id.* (citations omitted).

Application of the single-wrong theory as to the date on which the statute of limitations begins to run seems particularly appropriate on the present record. Plaintiffs allege they were promised a pay raise as of the time they assumed increased job responsibilities. Such alleged promises become increasingly difficult to refute with the passage of time.

> To hold otherwise would disregard the purpose of the statutory limitation, namely, to protect persons from being surprised through revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. If such acts as here involved are continuing, then aggrieved persons could well assert their claim fifteen, twenty, or thirty years hence. At that time it would be difficult to reconstruct the justifying rationale of such a [promise]. It is for this reason that statutes of limitation are, and should be strictly followed.

*McCarty v. Boeing Co.,* 321 F.Supp. 260, 261 (W.D.Wash.1970) (mem.) (footnotes omitted).

We conclude that the present case is more analogous to the single-wrong cases than to the continuing-wrong cases. Prior to November 1987, there was a contract of employment between the City and Plaintiffs that called for the payment of a certain salary.

When Plaintiffs' job titles and responsibilities changed, the City did not correspondingly change Plaintiffs' salaries. Plaintiffs' complaint is an attempt to force the City to make changes to the then-existing contract, changes that, according to Plaintiffs, are required by the City's merit ordinances and by principles of contract law. The only actionable wrong alleged by Plaintiffs in this case is the City's initial refusal to increase Plaintiffs' salaries. Although that wrong has continuing consequences in the form of lower paychecks, the continuing effects do not extend the life of Plaintiffs' breach of contract cause of action, which is based solely on that initial refusal. Because the actual breach of contract in this case occurred in November 1987, Plaintiffs had only until November 1990 to file their complaint. They failed to meet that deadline. We therefore affirm the trial court's dismissal of Plaintiffs' complaint.

**IT IS SO ORDERED.**

HARTZ and WECHSLER, JJ., concur.