**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2010-NMCA-038

Filing Date: March 25, 2010

Docket No. 28,227

VILLAGE OF ANGEL FIRE,
a municipality of the State of
New Mexico,

       Plaintiff-Appellant,

v.

BOARD OF COUNTY COMMISSIONERS
OF COLFAX COUNTY, a county of the
State of New Mexico,

       Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF COLFAX COUNTY
Eugenio S. Mathis, District Judge

Canepa & Vidal, P.A.
Joseph F. Canepa
Patricia J. Turner
Santa Fe, NM

for Appellant

Robin C. Blair
Raton, NM

for Appellee

## OPINION

**KENNEDY, Judge.**

**{1}** This case results from the disintegration of an agreement between the Village of Angel Fire (Village) and the Board of County Commissioners of Colfax County (County). In 2001, the parties executed a Joint Powers Agreement (JPA) in which the Village promised

1

to collect the trash of certain county residents in consideration for the sum of $50,000, paid semi-annually in payments of $25,000 each.  The County made scheduled payments until around July 15, 2004.  After it stopped making payments, the Village states, the County made no further payments but repeatedly promised it would as it restructured its finances.  Based on these representations, the Village claims that it refrained from filing suit and continued to collect garbage for the County.

**{2}** On April 10, 2007, the Village filed a complaint against the County in which it made claims for breach of contract, equitable estoppel, and quantum meruit, each based on the JPA.  Upon being sued, the County argued that the Village's claims were  barred by the statute of limitations prescribed by NMSA 1978, Section 37-1-23(B) (1976).  On that basis, the district court granted the County's motion for judgment on the pleadings.  The Village appeals, and we affirm.

**{3}** The Village also claimed in its complaint that the County should be estopped from asserting the statute of limitations. The Village alleges that the County strung them along with no intention of paying for garbage service and that the County had itself engineered a defect in the contract.  Alternatively, the Village argued the right to payment in quantum meruit.  On appeal, the Village claims that the JPA creates an installment contract that essentially provides a right to sue after any number of payments were missed.

**{4}** After reviewing the pleadings and the district court's order, we make the following holdings.  First, the Village did not argue with sufficient specificity below its assertion that the JPA was an installment contract for which the statute of limitations re-starts each time an installment goes unpaid.  As a result, that argument is not preserved for our review, and we hold that the statute of limitations began to run when the County first failed to pay.  This application of the statute of limitations prevents the Village's contract claim even if we assume the validity of the JPA. Second, the Village failed to establish a claim for equitable estoppel.  Last, sovereign immunity provides the County with an absolute barrier to suit in quantum meruit.  While fully recognizing that the County has received a great deal of valuable trash removal for free in the face of the JPA, we nevertheless affirm the order of the district court.

**STANDARD OF REVIEW**

**{5}** We review judgments on the pleadings made pursuant to Rule 1-012(C) NMRA according to the same standard as motions for failure to state a claim under Rule 1-012(B)(6) NMRA. *Dunn v. McFeeley*, 1999-NMCA-084, ¶¶ 10-11, 127 N.M. 513, 984 P.2d 760; *see, e.g.*, *Sanders v. Estate of Sanders*, 1996-NMCA-102, ¶¶ 6-7, 122 N.M. 468, 927 P.2d 23. We "accept as true all facts well pleaded and question only whether the plaintiffs might prevail under any state of facts provable under the claim." *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 760, 750 P.2d 118, 121 (1988).  All interpretations of law made by the district court are subject to a de novo standard. *Klinksiek v. Klinksiek*, 2005-NMCA-008, ¶ 4, 136 N.M. 693, 104 P.3d 559 (filed 2004).

**BACKGROUND**

**{6}** The JPA provides, "the Village and County wish to enter into an agreement . . . for the collection and disposal of refuse from real property located within the county boundaries." The Village promises to furnish "solid waste disposal" to the County in consideration for "two installments of $25,000[] each; which installments shall be due and payable commencing April 15, 2001[,] and continuing on July 15[] and April 15[] of each year that this contract is in place." Paragraph XV of the contract makes it "subject to the approval of the secretary of the New Mexico Department of Finance and Administration" (DFA) and indicates that the contract "shall not become valid and binding upon the parties until approval of . . . [DFA] has been obtained." Neither party disputes that the other is a political subdivision of the state of New Mexico.

**{7}** The agreement was executed by officials of both the County and the Village. On April 3, 2001, the County sent a letter transmitting the JPA to the Village for signature, indicating that it would get the agreement to DFA for its approval following the Village's executing the required signatures. DFA approval was never obtained, but the parties performed on the contract until April 15, 2004, when the County ceased making payments to the Village. The Village continued to collect the County's garbage until after suit was filed, another three years.

**{8}** The Village's complaint asked the district court to recognize the validity of the contract and require the County to make all back payments. By failing to pay under the terms of the contract, the County breached its obligations, and notwithstanding the contract's validity, the Village claimed that quantum meruit required the County to pay. As the complaint stated, the County "has benefitted by the Village's provision of refuse collection and disposal system services," and the County's continued failure to pay is both inequitable and unjust.

**{9}** The Village's complaint also asserted equitable estoppel. It claimed that the County encouraged the Village to enter into the contract, that the County falsely told the Village it was seeking the approval of DFA, and that the County falsely promised to pay unpaid installments on the contract. These acts were done, the Village claimed, with the intent "to receive the Village's refuse collection and disposal system services for which the County did not intend to pay the Village." As a result of these representations, the Village stated that it continued to perform under the contract and detrimentally changed its position.

**{10}** The County answered the complaint on May 16, 2007. It argued that it was the Village that had failed to procure DFA approval and stated that, without it, the contract was invalid. It also asserted sovereign immunity under Section 37-1-23 as a defense. That section provides

> A. Governmental entities are granted immunity from actions based on contract, except actions based on a valid written contract.

3

B.      Every claim permitted by this section shall be forever barred unless brought within two years from the time of accural.

The County also filed motions to dismiss for failure to state a claim and judgment on the pleadings. Those motions likewise raised Section 37-1-23 as a defense and disputed the validity of the contract.

**{11}**    The district court heard the motions on October 30, 2007. The County repeated its previous arguments, stating the contract was invalid and that the Village's claims were barred by both the statute of limitations and sovereign immunity. The Village reasserted the doctrine of equitable estoppel and stated that its claim accrued under Section 37-1-23 at the moment the County expressed doubt concerning the contract's validity. The County disagreed. It argued that the Village's claim accrued, if at all, when the County stopped paying on the contract, at the point of breach. Ruling from the bench, the district court denied the County's motion to dismiss for failure to state a claim and granted its motion for judgment on the pleadings. The court held that under Section 37-1-23, the Village's cause of action accrued, at the latest, in July 2004. Even if the disputed JPA is presumed to be valid, the district court ruled that because a two-year statute of limitations is absolute in this case, the Village's cause of action was barred.

**{12}**    The Village now appeals. It argues: first, that the statute of limitations accrued as to each payment at the time each became due; second, that equitable estoppel should prevent the County from asserting the statute of limitations as a defense; and third, that the County should be required to pay regardless of the contract's validity pursuant to the doctrine of quantum meruit.

**DISCUSSION**

**I.      The Statute of Limitations**

**{13}**    The Village claims that the district court incorrectly applied the statute of limitations to its contract claim. It urges us to reverse for two reasons. First, the Village argues that because the contract was one payable in installments, the statute of limitations accrued differently than it would on a non-installment contract. Second, the Village argues that it relied on the County's continued promises to pay, and such reliance creates a case of equitable estoppel. Thus, the Village contends that the County should be prohibited from asserting the statute of limitations as a defense. We recognize that the parties disputed the validity of the JPA below. However, in this appeal it is unnecessary for us to consider that issue. Even if we presume without deciding that the JPA is valid, our conclusion concerning the district court's application of the statute of limitations is dispositive and requires affirmance. We likewise note that although the JPA contains an arbitration clause, neither party invoked it below, and we therefore consider it waived. *See Wood v. Millers Nat'l Ins. Co.*, 96 N.M. 525, 527-28, 632 P.2d 1163, 1165-66 (1981) (holding that parties reach a "point of no return" and waive arbitration at the moment they "invoke[] the court's discretionary power, prior to demanding arbitration, on a question other than . . . arbitration[]").

4

## A. Preservation of the Village's Installment Contract Argument

**{14}** In its brief, the Village claims that its agreement with the County was an installment contract. As such, the statute of limitations found in Section 37-1-23 accrued as to each payment at the time each became due. The Village cites *Tull v. City of Albuquerque*, 120 N.M. 829, 830-31, 907 P.2d 1010, 1011-12 (Ct. App. 1995), and *Plaatje v. Plaatje*, 95 N.M. 789, 790-91, 626 P.2d 1286, 1287-88 (1981), in support of this proposition. Those cases discuss differing application of statutes of limitations on contracts involving installment payments as opposed to others. Those cases also introduce discrete legal terms of art, namely a "continuing-wrong theory" which tolls the statute each time an obligation goes unfulfilled, *Tull*, 120 N.M. at 830, 907 P.2d at 1011, and a "single-wrong approach" that applies to most other contracts and tolls the statute of limitations beginning the first time an obligation goes unfulfilled. *Id.* at 830-31, 907 P.2d at 1011-12. Applying the installment/continuing-wrong theory to the facts of this case, as the Village asserts, would result in "a new breach of contract . . . with each default in payment" and would allow the Village to sue on any non-payment occurring within the two-year statutory period. *See* § 37-1-23.

**{15}** We will not review arguments that were not preserved in the district court. *Rio Grande Kennel Club v. City of Albuquerque*, 2008-NMCA-093, ¶ 31, 144 N.M. 636, 190 P.3d 1131. This rule serves two purposes. First, it allows the district court an opportunity to cure errors, thereby dispensing with the need for an appeal, and second, it creates a reviewable record. *Lopez v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶ 6, 139 N.M. 730, 137 P.3d 670. In order to properly preserve an issue, "it must appear that [the party] fairly invoked a ruling of the [district] court on the same grounds argued in the appellate court." *Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987). In its briefs, the Village directs us to various points in the record where it claims this issue was preserved. The Village argues that its complaint, its response to the County's motion for judgment on the pleadings, and its oral statements before the district court were each sufficient to preserve the argument. After close examination of each, we disagree.

**{16}** First, the assertions contained in the Village's complaint are insufficient to preserve the issue. The complaint never uses the phrase *installment contract*. Instead, it describes the contract as one payable "in two equal payments . . . each year." The contract was attached to the Village's complaint, and although that document does describe the County's responsibilities as "installments," it is silent as to how non-payments should be treated or, specifically, how the statute of limitations should be applied. Neither document presents the district court with an opportunity to rule on this issue on the same grounds as presented here.

**{17}** Second, the Village's response to the County's motion for judgment on the pleadings, though somewhat more specific, likewise fails to properly place the issue before the district court. In it, the Village defends against the County's statute of limitations argument and claims "[t]hat the County did not timely pay one installment does not relieve the County of its obligation to do so at any time for any reason, including not by the application of a limitations

statute." Such a general statement, without more, does not fulfill the Village's obligation to "fairly invoke[] a ruling of the [district] court on the same grounds argued" on appeal, *Woolwine*, 106 N.M. at 496, 745 P.2d at 721, especially because the Village never revisited this notion at the hearing. Even if we could reliably say that this statement constitutes "the same grounds" as the Village's argument on appeal, the Village's failure to raise it later, at the hearing, results in a failure to "fairly invoke [] a ruling of the [district] court." *Id.* As our Supreme Court has stated, "[a] litigant . . . has a duty" to establish a record "of the proceedings he desires reviewed; otherwise the correctness of such ruling cannot be questioned." *Barnett v. Cal M, Inc.*, 79 N.M. 553, 556, 445 P.2d 974, 977 (1968). Issues "not called to the attention of the [district] court . . . cannot be raised for the first time on appeal." *Id.* (citation omitted).

**{18}** The pertinent portion of the hearing begins during the County's argument. The County discusses the two-year statute of limitations and argues that it absolutely bars the Village's claim. When the County concludes, the district court asks the Village to respond. The Village then stakes its argument to the theory of equitable estoppel and describes the promises made by the County. At no point does the Village argue that an installment contract accrues differently than another type of contract. Below, the Village argued that the contract, which had no ending date, continued irrespective of the County's failed payments and obligated the County until the rights of the parties were adjudicated. The distinction between a continuing wrong and a single wrong with continuing effects, as explained in *Tull*, 120 N.M. at 830, 907 P.2d at 1011, was never mentioned. Neither did the Village advance any theory invoking, or even analogous to, the one at issue in *Plaatje*, nor did it ever argue that installment contracts should be treated differently. *See* 95 N.M. at 791, 626 P.2d at 1288. The word *installment*, used by the Village in referring to a payment due under the JPA, is not associated with these legal distinctions, and we hold that this argument, applying a different calculation of the statute of limitations for installment payments, went unpreserved. The Village never discussed the theories of "continuing wrong" versus "single wrong," nor did it discuss *Tull* or *Plaatje*. A review of the hearing makes clear that this argument was neither considered by the district court nor presented on the same grounds as argued here. We hold that the statute of limitations began to run at the time the first payment was missed by the County.

**B.      Effect of Equitable Estoppel on the Statute of Limitations**

**{19}** The Village's second statute of limitations argument centers on a theory of equitable estoppel. The Village claims that after becoming aware of the County's failure to pay, it refrained from filing suit against the County during the two-year statute of limitations period because of its reliance on the County's promises to provide "payment to cover payments in default" and to "seek and acquire the approval of DFA."

**{20}** As a result, the Village urges us to reverse the district court's application of the statute of limitations and remand in order to allow discovery of additional facts relevant to the issue of equitable estoppel. Based on the facts asserted in the pleadings, we hold that the Village has failed to establish a claim for equitable estoppel. And absent a new agreement, such a request for forbearance from the County would not operate to toll the statute of limitations, because at

the time the County made its alleged promises to the Village, it had already breached the contract. Any mere promise of payment thereafter would not slow the inexorable march of the statute. *See, e.g.*, *Wilson v. Black*, 49 N.M. 309, 312, 163 P.2d 267, 270 (1945).

**{21}** To prevail on a claim of equitable estoppel, the plaintiff must prove that the defendant: (1) concealed material facts, falsely represented material facts, or made representations of fact different or inconsistent with later assertions in court; (2) had an intent or "expectation[] that such conduct" would "be acted upon by the" plaintiff; and (3) possessed either actual or constructive knowledge of the real facts. *Lopez v. State*, 1996-NMSC-071, ¶ 18, 122 N.M. 611, 930 P.2d 146. Next, the plaintiff must prove that it: (1) lacked both the knowledge and the means of acquiring knowledge of the "truth as to the facts in question"; (2) relied on the defendant's conduct; and (3) acted upon that conduct in a way that prejudicially altered its position. *Id.*; *see Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000-NMSC-030, ¶ 9, 129 N.M. 677, 12 P.3d 431.

**{22}** The Village alleges that after the County ceased to make payments on the contract, the County promised it would pay when it had no intention of doing so. We presume the truth of this allegation. However, as mentioned above, no estoppel arises from the fact because at the time any promise was made, the Village knew that the JPA was in breach for the County's failure to pay, and absent more, a mere request for forbearance will not block assertion of the statute of limitations. *Wilson*, 49 N.M. at 312, 163 P.2d at 270. Certainly, *Wilson* recognizes "that a promise to pay a debt . . . may be made in such a manner, and under such circumstances, that if relied upon, it may" estop a defendant from asserting a statute of limitations defense. *Id.* We suspect that the County may have acted so as to conceal facts or to make misrepresentations of fact which it intended the Village to act upon. However, as noted below, the Village has not sufficiently averred facts sufficient for a claim of equitable estoppel.

**{23}** The Village alleged that the County intentionally failed to have the JPA approved by DFA, intending to later assert the invalidity of the contract owing to the lack of such approval. However, Attachment B to the complaint consists of a letter dated April 3, 2001, in which the County asks the Village to execute the original copies of JPA and return them to the County "so [it] can be forwarded to DFA." The letter continues, "A fully executed original will be sent to the Village once DFA has approved the [JPA]." Later, the County asserted that the contract was invalid for lack of DFA approval and that payments were made based on a "mistaken belief" that the Village secured DFA approval. Taking the Village's allegations as true under our standard of review, we infer that the County was responsible for securing DFA approval for the JPA and did not do so, later asserting that: (a) approval was not their responsibility to begin with, and (b) that the JPA was void for the very lack of approval the County told the Village it would obtain.

**{24}** We note that nowhere in the Village's complaint is there an allegation that it complied with the County's April 3 letter. We also note that the copy of the JPA attached to the complaint is conspicuously executed by representatives of both the Village and the County but lacks the required DFA approval. The complaint does not allege that the Village sent the copies back for

7

DFA approval, that the County represented falsely that approval was obtained, or that the Village relied on such a representation. It is not alleged that the County sent back DFA-approved copies to the Village as it stated it would. We thus consider it fair to believe that the Village knew the JPA had not been approved from the very face of the copy it attached to its complaint. Estoppel requires that a plaintiff lack both the "knowledge and . . . the means of [acquiring] knowledge of the truth as to the facts in question," and that the plaintiff prove prejudicial reliance on the defendant's conduct. *Mem'l Med. Ctr., Inc.*, 2000-NMSC-030, ¶ 9 (internal quotation marks and citation omitted). We cannot see that these elements are pled in the complaint. We may never know if the County nefariously intended to acquire free garbage pickup at the Village's expense. We similarly do not know if the Village was led astray or simply failed to return the executed documents to the County by oversight or inertia. Nonetheless, the Village continued to provide services after payment stopped rather than terminate services because the County promised to make good on the agreement. Unfortunately, the inability to plead the elements of estoppel forecloses this claim, and the Village cannot recover the value of those continued services. We are instructed to employ estoppel against a government entity "where there is a shocking degree of aggravated and overreaching conduct or where right and justice demand it." *Id.*, ¶ 10 (internal quotation marks and citation omitted).

**{25}** The actions of the County stringing along the Village and taking its services for free are neither honest nor ethical. Perhaps the County might have followed up on DFA approval if the Village had not responded, and perhaps the Village might have seen that DFA approval had not been obtained as required in 2004 when the County breached the JPA. In the absence of necessary facts, we cannot consider the County's actions consistent with a mode of shocking, aggravated, or overreaching conduct. Nor can we consider this a case deserving of our discretion under the "right and justice" standard. *Id.* The asserted factual scenario does not constitute "one of those exceptional circumstances in which estoppel can be used" against a state actor. *Id.* ¶ 14. For this reason, we affirm the district court.

## II.    Applicability of Quantum Meruit

**{26}** Finally, the Village argues that the County is liable in quantum meruit. The language of Section 37-1-23(A) explicitly bars such a claim, stating "[g]overnmental entities are granted immunity from actions based on contract, except actions based on a valid written contract." *Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 174, 793 P.2d 855, 856 (1990), illustrates the principle. In that case, a sub-contractor on a state public works project brought suit against the state in quantum meruit. The state asserted Section 37-1-23(A) as a defense, arguing that the statute established its sovereign immunity to such claims. The district court dismissed the supplier's claim on that basis, and the supplier appealed. *Hydro Conduit Corp.*, 110 N.M. at 174, 793 P.2d at 856. Our Supreme Court affirmed the dismissal and held that the Legislature intended Section 37-1-23(A) "to reinstate . . . sovereign immunity" as a result of that doctrine's abolishment under prior case law. *Hydro Conduit Corp.*, 110 N.M. at 177, 793 P.2d at 859. The language of Section 37-1-23(B) provides an exception. It allows "claims based on valid written contracts" to proceed. *Hydro Conduit Corp.*, 110 N.M. at 177, 793 P.2d at 859. The supplier argued that claims in quantum meruit are fundamentally different than those which sound in

either tort or contract; and while the Supreme Court agreed, it held that Section 37-1-23(A) still bars such a claim. "[E]ven though an action for [quantum meruit] is not based on contract in a strict theoretical sense, it is so closely related to an action which *is* so based that the immunity statute . . . should be construed to extend immunity to an unjust enrichment claim as well as to a claim founded on a true, but unwritten, contract." *Hydro Conduit Corp.*, 110 N.M. at 179, 793 P.2d at 861 (emphasis in original) (internal quotation marks omitted). Thus, by operation of the sovereign immunity statute, the Village's claim in quantum meruit is barred. Under Section 37-1-23, claims for contract and quantum meruit must stand and fall together.

{27}  Nevertheless, the Village distinguishes these facts from those in *Hydro*. That case involved a private litigant's claim against the state, whereas this case involves the claim of one sovereign state actor against another equally sovereign state actor. Thus, as the argument goes, sovereign immunity is inapplicable. We are unpersuaded. The Village cites no case law to support it, and we will not consider propositions unsupported by citation to authority. *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969; *Wilburn v. Stewart*, 110 N.M. 268, 272, 794 P.2d 1197, 1201 (1990) ("Issues raised in appellate briefs that are unsupported by cited authority will not be reviewed . . . on appeal.").

**CONCLUSION**

{28}  Based on the foregoing analysis, we affirm the judgment on the pleadings granted to the County by the district court.

{29}  **IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**LINDA M. VANZI, Judge**

**Topic Index for *Village of Angel Fire v. Colfax Co.*, No. 28,227**

**AE**          **APPEAL AND ERROR**
AE-PA          Preservation of Issues for Appeal
AE-SR          Standard of Review

**CN**          **CONTRACTS**
CN-BR          Breach

| CN-FC | Formation of Contract |
| CN-QM | Quantum Meruit |
| CN-SL | Statute of Limitations |

**CP** — **CIVIL PROCEDURE**
| CP-PE | Estoppel |
| CP-JT | Judgment on the Pleadings |

**GV** — **GOVERNMENT**
| GV-CU | Counties |
| GV-MU | Municipalities |
| GV-SI | Sovereign Immunity |