# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2019-NMCA-046

Filing Date: June 6, 2019

No. A-1-CA-36622

KARIM SALEHPOOR,

     Plaintiff-Appellee,

v.

NEW MEXICO INSTITUTE OF MINING
AND TECHNOLOGY,

     Defendant-Appellant,

and

WARREN OSTERGREN, DR. TOM ENGLER,
BOARD OF REGENTS OF THE NEW MEXICO
INSTITUTE OF MINING AND TECHNOLOGY,
and DANIEL LOPEZ,

     Defendants.

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY**
**Matthew G. Reynolds, District Judge**

Released for Publication September 17, 2019.

Santiago E. Juarez
Albuquerque, NM

for Appellee

Keleher & McLeod, P.A.
Sean Olivas
Chris R. Marquez
Albuquerque, NM

for Appellant

**OPINION**

**IVES, Judge.**

**{1}** Plaintiff Karim Salehpoor sued his former employer, Defendant New Mexico Institute of Mining and Technology, claiming, among other things, that Defendant wrongfully discharged him in violation of his employment contract. Defendant moved for summary judgment based on two theories of sovereign immunity under NMSA 1978, Section 37-1-23 (1976): (1) that Plaintiff's claim was time-barred and (2) that his claim was not based on a valid written contract. The district court denied the motion. We granted Defendant's petition for a writ of error pursuant to Rule 12-503 NMRA to review the nonfinal order. We affirm.

**FACTS AND PROCEDURAL HISTORY**

**{2}** Beginning in January 2008, Defendant employed Plaintiff as a tenure-track mechanical engineering professor under a series of written one-year employment contracts, the most recent of which covered the 2011/2012 academic year from August 8, 2011, through May 11, 2012. On April 2, 2012, Defendant's Vice President of Academic Affairs sent Plaintiff a memorandum informing him that Defendant would not enter into a new employment contract with him and directing him to "surrender all [of Defendant's] property[,] including keys[,]" by May 11, 2012. Plaintiff continued working for Defendant through that date.

**{3}** Plaintiff commenced this lawsuit on May 12, 2014, alleging that Defendant had breached their contract by wrongfully terminating him in violation of "the total employment agreement."[1] *See generally Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, 121 N.M. 728, 918 P.2d 7 (holding that an implied employment contract based on a written personnel policy is a "written contract" for purposes of Section 37-1-23(A)); *Whittington v. State Dep't of Pub. Safety*, 2004-NMCA-124, 136 N.M. 503, 100 P.3d 209 (making clear that the implied employment contract doctrine is applicable beyond the context of at-will employment and contractual terms relating to termination). Plaintiff alleged that his employment had ended on May 11, 2012,[2] when Defendant "breached [the] employment contract. . . by terminating [him,]" and that Defendant also breached the employment contract "[o]n or about April 2012" when it gave "notice of the impending termination of Plaintiff." Plaintiff alleged that his contract with Defendant "was reinforced and amplified by certain written personnel practices, memoranda, policies, and procedures . . . based upon which Plaintiff had a reasonable expectation of continued employment with discharge only for good cause proven." The complaint specified that Defendant's

---

1 Plaintiff's complaint also included a claim for wrongful termination in violation of public policy, which the district court dismissed, and a claim for defamation, on which the district court granted Defendant's motion for summary judgment. Neither claim is part of this appeal.

2 Due to an apparent typographical error, the complaint alleged that Plaintiff's "employment continued until May 11, 2013." The surrounding allegations make clear that Plaintiff meant to allege that his employment ended in 2012, and all of the evidence before us is to that effect.

written policies and procedures and actual practices included a program of "progressive discipline" through which [Defendant] created self-imposed limitations on any discharge or discipline of an employee. These written policies and actual practices expressly limited the grounds for discharge and created self[-]imposed mandatory pre-termination steps and procedures.

**{4}** Defendant moved for summary judgment on Plaintiff's wrongful discharge claim based on two theories of sovereign immunity under Section 37-1-23. Defendant argued first that Section 37-1-23(B) barred Plaintiff's claim for wrongful discharge based on breach of contract because Plaintiff filed his complaint more than two years after his claim accrued. The parties did not dispute that Defendant gave Plaintiff notice of his termination on April 2, 2012, that Plaintiffs' employment terminated May 11, 2012, or that Plaintiff filed his complaint on May 12, 2014. Whether summary judgment was appropriate hinged on whether Plaintiff brought his claim "within two years from the time of accrual." Section 37-1-23(B). Plaintiff argued that his claim accrued from the date of his termination, May 11, 2012, while Defendant argued that Plaintiff's claim accrued on April 2, 2012, when Defendant gave Plaintiff the notice of nonrenewal.

**{5}** As an additional basis for summary judgment, Defendant argued that Section 37-1-23(A) barred Plaintiff's claim because it was not based on a valid written contract. This was so, according to Defendant, because Plaintiff had failed to allege that Defendant had breached a specific contractual term of any policy, employment manual, or other document. In response, Plaintiff pointed to his interrogatory answers and affidavit, which referenced a document, titled "Regulations Governing Academic Freedom and Tenure" (the Regulations), purportedly issued by Defendant. In his affidavit, Plaintiff alleged that Defendant violated various provisions of the Regulations, including the procedure for providing notice of termination to employees and the prohibition against retaliatory termination. Defendant replied, claiming that Plaintiff had failed to produce in discovery or in response to the summary judgment motion any document that included the implied contract terms Defendant had allegedly breached.

**{6}** During the hearing on the summary judgment motion, Plaintiff's counsel read a document that he identified as the Regulations into the record. Defendant objected on the ground that Plaintiff had failed to produce the document in discovery and asserted that it was therefore unable to identify the document from which Plaintiff's counsel had read. The district court ordered supplemental briefing and directed Plaintiff to produce the document he had read from during the hearing. Plaintiff attached the Regulations to his supplemental brief along with responses to requests for production that identified the Regulations. In response, Defendant complained once again that Plaintiff had never produced the Regulations in discovery and argued that Plaintiff had failed to authenticate the Regulations.

**{7}** The district court denied Defendant's summary judgment motion. We granted Defendant's petition for a writ of error to review the district court's order.

**DISCUSSION**

**I.      Statute of Limitations**

**{8}**      Defendant first argues that the district court erroneously denied Defendant's motion for summary judgment based on the two-year statute of limitations in Section 37-1-23(B). Defendant contends Plaintiff's claim for wrongful discharge by breach of contract accrued on April 2, 2012, when Defendant notified Plaintiff that it had decided not to renew Plaintiff's contract.

**{9}**      Because the parties do not dispute when Defendant gave Plaintiff notice of his termination, when Plaintiff's employment actually terminated, or when Plaintiff filed his complaint, our review is limited to whether the district court correctly applied the governing law to the undisputed facts. *See Haas Enters. v. Davis*, 2003-NMCA-143, ¶ 9, 134 N.M. 675, 82 P.3d 42. ("When facts relevant to a statute of limitations issue are not in dispute, the standard of review is whether the district court correctly applied the law to the undisputed facts."). We review this issue de novo. *Id.*

**{10}**      Section 37-1-23(B) provides that claims for breach of a valid written contract against governmental entities "shall be forever barred unless brought within two years from the time of accrual." A claim accrues when all of the elements of the claim are present—when the claim "come[s] into existence as an enforceable claim or right[.]" *Accrue*, Black's Law Dictionary (10th ed. 2014); *see also* 1 Calvin W. Corman, *Limitation of Actions* § 6.1, at 370 (1991) ("It would clearly be unfair to charge [a] plaintiff with the expiration of any time before the plaintiff's cause of action could be prosecuted to a successful conclusion."). Plaintiff's wrongful discharge claim is based on Defendant's alleged breach of an implied contractual term, as described above. A breach of contract claim accrues at the time of breach.   Corman, *supra*, § 7.2.1, at 482. Accordingly, "[t]he statute of limitations on a breach of contract claim runs from the date the contract is breached." *Nashan v. Nashan*, 1995-NMCA-021, ¶ 29, 119 N.M. 625, 894 P.2d 402. To determine whether Section 37-1-23(B) bars Plaintiff's claims, we must therefore identify the alleged breach.

**{11}**      We begin with the basic premise that, because "[t]he law of contract is the law of promises[,]" 10 John E. Murray, Jr., *Corbin on Contracts* § 54.1, at 112 (rev. ed. 2014), an action for breach of contract is an action on a broken promise.[3] Ordinarily, a breach occurs when a party "fail[s] to perform a contractual obligation when that performance is called for[,]" UJI 13-822 NMRA—in other words, when the party fails to perform as promised. When an implied term of an employment agreement obligates the employer

---

[3] Because of the "imbalance of power" inherent in the employer-employee relationship and the need to protect the "reasonable expectations employers create in their employees," employment contracts "represent a unique body of law." *Campos de Suenos, Ltd. v. Cty. of Bernalillo*, 2001-NMCA-043, ¶ 26, 130 N.M. 563, 28 P.3d 1104. While these and similar public policy considerations may require departure from ordinary principles of contract law when those principles do not square with the realities of modern employment, *see, e.g., Hartbarger v. Frank Paxton Co.*, 1993-NMSC-029, ¶¶ 7-12, 115 N.M. 665, 857 P.2d 776, neither party has persuaded us that such departure is necessary to decide this appeal.

to follow specified termination procedures or to terminate the employee only for specified reasons, nonperformance occurs when the employer actually terminates the employee without following those procedures or for reasons other than those specified. *See* UJI 13-2302 NMRA ("[I]f [the employee's] discharge violated [the implied] agreement, then the discharge was wrongful."); UJI 13-2303 NMRA (same); *see also Gormley v. Coca-Cola Enters.*, 2004-NMCA-021, ¶ 12, 135 N.M. 128, 85 P.3d 252 (discussing "the termination element of a claim of breach of implied contract to terminate for just cause only").

**{12}** Applying these principles, we conclude that Defendant did not fail to perform its obligations under any implied agreement by providing Plaintiff with the April 2, 2012, notice of nonrenewal. If Plaintiff is correct that an implied agreement required Defendant to refrain from terminating Plaintiff unless Defendant used specific procedures or had specific reasons for termination, Defendant could only breach the agreement by actually terminating Plaintiff in a manner inconsistent with the agreement's terms. We therefore hold that Plaintiff's cause of action accrued when Plaintiff's employment terminated, and that the time for bringing his wrongful discharge claim under Section 37-1-23(B) began to run only then. Because Plaintiff filed his complaint on May 12, 2014—exactly two years from the accrual of his claim—the district court correctly concluded that Plaintiff's claim was timely.

**{13}** Defendant does not claim that any breach by nonperformance occurred before May 11, 2012. Instead, citing UJI 13-822, Defendant contends that the breach at issue occurred, if at all, on April 2, 2012, when it notified Plaintiff that his contract would not be renewed. We disagree.

**{14}** UJI 13-822 and UJI 13-824 NMRA address the doctrine of anticipatory repudiation. UJI 13-822 states that "[a] person may breach a contract by . . . announcing ahead of time that he or she will not perform a contractual obligation when the time for that performance comes due[.]" And UJI 13-824 provides that "[i]t is a breach of contract if, before performance became due, [the promisor] announce[s] or otherwise demonstrate[s the promisor's] intention not to perform a contractual obligation[.]" Neither these instructions nor other authorities addressing anticipatory repudiation support Defendant's requested holding. The doctrine of anticipatory repudiation is an exception to the general rule that only a party's failure to perform as promised constitutes a breach. It allows a party to a contract to treat the contract as breached upon learning of the other party's repudiation of its contractual obligations—its "distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement." *Gilmore v. Duderstadt*, 1998-NMCA-086, ¶ 15, 125 N.M. 330, 961 P.2d 175 (internal quotation marks and citation omitted). The doctrine protects a non-breaching party's expectation, not only that the other party will perform, but also that the other party will refrain from "substantially . . . impair[ing]" that expectation of performance by allowing the non-repudiating party to file suit immediately after communication of the repudiation. Restatement (Second) of Contracts ch. 10, topic 3, intro. note (1981). *See generally* Murray, *supra*, §§ 54.1, 54.2.

**{15}** Critically, however, an anticipatory repudiation "is not automatically" a breach of contract; a repudiation does not operate as a breach unless "it [is] treated as such *at the election of the promisee.*" UJI 13-824 Committee Commentary (emphasis added). Because the decision to treat a repudiation as a breach is the non-breaching party's to make, repudiation does not start the statute of limitations clock unless and until the non-repudiating party makes that decision. *E.g.*, Murray, *supra*, § 54.31, at 333 ("There is no necessity for making the statutory period of limitation begin to run against the plaintiff until the day fixed by the contract for the rendition of performance, at least unless the plaintiff definitely elects to regard the anticipatory repudiation as a final breach."); Corman, *supra*, § 7.2.1, at 488 ("The aggrieved party is entitled to sue either when the anticipatory repudiation occurs or at the later time for performance under the contract. The time of accrual consequently depends on whether the injured party chooses to treat the anticipatory repudiation as a present breach."); 4 Arthur Linton Corbin, *Corbin on Contracts* § 989, at 967 (1951); Restatement (First) of Contracts § 322 (1932); *cf. Gibbs v. Whelan*, 1952-NMSC-005, ¶ 10, 56 N.M. 38, 239 P.2d 727 ("A party to a contract cannot take advantage of his own act or omission to escape liability thereon.").

**{16}** Defendant invokes the general principle that an anticipatory repudiation may operate as a breach, but does not argue that Plaintiff elected to treat the notice of April 2, 2012, as a breach before his employment terminated. We are under no obligation to review undeveloped arguments, *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076, and we will not scour the record for facts that might support Defendant's position. The undisputed record evidence suggests that Plaintiff did not treat the notice as a breach. He continued to work for Defendant until his termination in May 2012, and he did not file suit until after that time. Absent evidentiary support for a finding that Plaintiff elected to treat the notice as a breach, we conclude that, even if Defendant's notice of nonrenewal rose to the level of an anticipatory repudiation, it did not start the statute of limitations clock.

**{17}** Defendant cites *Tull v. City of Albuquerque*, 1995-NMCA-123, 120 N.M. 829, 907 P.2d 1010, for the proposition that "'[m]ere continuity of employment, without more, is insufficient to prolong the life of a cause of action[.]'" *Id.* ¶ 8 (quoting *Del. State Coll. v. Ricks*, 449 U.S. 250, 257 (1980)). Neither this metaphor nor any other aspect of *Tull* persuades us that the district court erred. In *Tull*, we rejected the plaintiffs' argument that a continuing-wrong theory extended the time in which to bring contractual failure-to-promote claims under NMSA 1978, Section 37-1-24 (1941). *Tull*, 1995-NMCA-123, ¶ 11. The plaintiffs were city employees who alleged that they had been promised an increase in pay to reflect increased job responsibilities they had assumed. *Id.* ¶¶ 2, 4. The plaintiffs claimed that a new wrong in the form of a breach of contract occurred each time they received a paycheck that did not reflect the allegedly promised levels of compensation. *Id.* ¶ 4. According to the plaintiffs, each deficient paycheck restarted the limitations clock for purposes of Section 37-1-24. *Tull*, 1995-NMCA-123, ¶ 4. We disagreed, concluding that "[t]he only actionable wrong alleged . . . [was] the [c]ity's initial refusal to increase laintiffs' salaries"—its breach of a "promise [to provide] a pay raise *as of the time* [*the plaintiffs*] *assumed increased job responsibilities.*" *Id.* ¶¶ 10-11 (emphasis added). Accordingly, we held that because "the actual breach of contract" at

issue was the failure to pay increased wages, the "continuing consequences [of that breach] in the form of lower paychecks . . . d[id] not extend the life of Plaintiffs' breach of contract cause of action[.]" *Id.* ¶ 11.

**{18}**    *Tull* has no bearing on this appeal, the outcome of which does not depend on whether the alleged wrong was single or continuing. The issue before us is when Plaintiff's claim "accru[ed]" under Section 37-1-23(B), and, as we have explained, that did not occur under the facts presented until the actual termination of Plaintiff's employment. The metaphor we used in *Tull* does not fit here. The continuation of Plaintiff's employment did not prolong the life of his wrongful termination claim. It delayed the birth of that claim.[4]

## II.    Valid Written Contract

**{19}**    Defendant also argues that the district court erred by denying its motion for summary judgment because Defendant is immune from Plaintiff's suit. Defendant seeks refuge in Section 37-1-23(A), which grants "[g]overnmental entities . . . immunity from actions based on contract, except actions based on a valid written contract."

**{20}**    Our process for reviewing an order denying summary judgment involving immunity from suit "is more complex than a review of ordinary summary judgment decisions." *Campos de Suenos, Ltd. v. County of Bernalillo*, 2001-NMCA-043, ¶ 9, 130 N.M. 563, 28 P.3d 1104. "[A] party losing its immunity from suit in an adverse summary judgment decision may file a writ of error seeking immediate review of that decision in order to protect its right not to stand trial. *Id.* Nevertheless, "not every challenge to a denial of immunity is appropriate for immediate, collateral review because some assertions of immunity are inseparable from the merits of the case." *Id.* We generally limit the scope of our review of immunity decisions under the collateral order doctrine to "abstract issues of law," but review evidentiary issues that arise as we would in any summary judgment case, by viewing the evidence "in the light most favorable to the party opposing the motion." *Id.* ¶¶ 9-10 (internal quotation marks and citation omitted). We then "determine whether the opposing party has presented sufficient evidence to overcome an assertion of immunity from suit," which "is a legal question that we review de novo." *Id.* ¶ 10.

**{21}**    Applying this standard, we conclude that the district court did not err in denying Defendant's summary judgment motion. It is undisputed that Defendant and Plaintiff executed a written employment contract in May 2011 covering Plaintiff's employment between August 8, 2011, and May 11, 2012. When a written employment contract

---

[4] Both parties urge us to borrow from opinions issued by courts in other jurisdictions that address how those jurisdictions' time-bar statutes apply to various types of employment claims under those jurisdictions' laws. Because New Mexico law and established principles of contract law dictate the outcome of this appeal, we have no need to rely on, or even discuss, the out-of-jurisdiction cases the parties have cited. *Cf. In re Adoption of Francisco A.*, 1993-NMCA-144, ¶ 67, 116 N.M. 708, 866 P.2d 1175 (Hartz, J., specially concurring) (recognizing that New Mexico is unique and that discussing out-of-jurisdiction authorities is no substitute for analyzing pertinent New Mexico law).

exists, "our courts have been particularly sensitive to an employee's reliance upon extrinsic evidence to aid in interpreting an existing employment relationship evidenced by a writing." *Univ. of N.M. Police Officer's Ass'n v. Univ. of N.M.*, 2005-NMSC-030, ¶ 18, 138 N.M. 360, 120 P.3d 442. "[T]hat extrinsic evidence has usually been in the form of other writings, such as a personnel manual or written memoranda regarding a written contract." *Id.*; *see, e.g.*, *Garcia*, 1996-NMSC-029, ¶¶ 12-13. "Whether an employer's words and conduct support a reasonable expectation on the part of employees that they will be dismissed only in accordance with specified procedures or for specified reasons generally is a question of fact for the jury." *Mealand v. E. N.M. Med. Ctr.*, 2001-NMCA-089, ¶ 9, 131 N.M. 65, 33 P.3d 285. The employer's "promissory statement [must be] sufficiently explicit to support a jury finding that this statement established a norm of conduct." *Id.* ¶ 14 (alteration, internal quotation marks, and citation omitted).

**{22}** Plaintiff's wrongful discharge theory rests on these precedents. Plaintiff claims that the contract for the 2011/2012 academic year does not state all of the terms of the parties' employment agreement, that other documents memorialize additional terms, and that Defendant breached those additional terms. In response to Defendant's summary judgment motion, Plaintiff relied on the Regulations Governing Academic Freedom and Tenure. Plaintiff's counsel pointed to Subsection II(D), which is titled "Non-reappointment and Termination of Appointments by the Institute." Counsel contended that Defendant had violated Subsection II(D) by terminating Plaintiff without giving him sufficient advance notice. Defendant does not argue on appeal that the content of the Regulations is insufficient, as a matter of law, to support Plaintiff's claim that Defendant had contractually restricted its power to terminate him.

**{23}** Instead, Defendant argues that the district court's reliance on the Regulations in denying its summary judgment motion was improper for two apparently separate reasons. First, Defendant argues that Plaintiff failed to present evidence that the Regulations were in effect at the time his employment terminated. Defendant appears to claim that if the Regulations were not in effect during the relevant time period, then they were not part of the "written contract," and Plaintiff's claim could not be "based on" them for purposes of Section 37-1-23(A). If, however, it is reasonable to infer from the record that the Regulations were in effect during the relevant time period, we cannot reverse the district court. *See Madrid v. Brinker Rest. Corp.*, 2016-NMSC-003, ¶ 16, 363 P.3d 1197 (internal quotation marks and citation omitted) ("We resolve all reasonable inferences in favor of the party opposing summary judgment[.]"). The Regulations state that they were "[a]pproved by the Board of Regents of New Mexico Institute of Mining and Technology 1 April 1985." On their face, the Regulations are evidence that Defendant adopted them before Plaintiff joined Defendant's faculty.[5] Defendant presented no evidence that the Regulations did not remain in effect at the end of Plaintiff's employment. On this record, the district court could have reasonably inferred that the Regulations were still in effect at the time Plaintiff contends he was terminated.

---

5 During the summary judgment hearing, the district court suggested that it would grant the motion if it concluded, after reviewing the parties' supplemental briefs, that the Regulations went into effect *after* the 2011/2012 academic year. Plaintiff's supplemental brief included the Regulations, which indicate that Defendant adopted them long before Plaintiff's employment began.

The district court could only have granted summary judgment for Defendant by assuming that Defendant had rescinded, replaced, or amended the Regulations in a manner and at a time that precluded them from serving as implied terms of the parties' contract. But summary judgment decisions must rest on evidence, not assumptions. The district court did not err by rejecting Defendant's argument about effective dates.

**{24}**　Defendant also argues that Plaintiff failed to establish that the Regulations are authentic under our rules of evidence. Had this been the only argument in Defendant's petition for a writ of error, we would have denied the petition. A district court's discretionary ruling about whether a particular document is authentic, *see State v. Trujillo*, 2002-NMSC-005, ¶ 15, 131 N.M. 709, 42 P.3d 814, does not cry out for immediate review under a writ of error, even when that document is pertinent to an immunity issue. As our Supreme Court has recognized, "considerations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources" weigh in favor of limiting collateral review to cases presenting abstract issues of law. *Handmaker v. Henney*, 1999-NMSC-043, ¶ 16, 128 N.M. 328, 992 P.2d 879 (internal quotation marks and citation omitted); *see also Campos de Suenos, Ltd.*, 2001-NMCA-043, ¶ 17 (noting that we generally reserve writ of error review for discrete legal issues). If we routinely used writs of error to review discretionary rulings on the admissibility of evidence, we would expand the collateral order doctrine beyond appropriate bounds, producing an excessive number of piecemeal appeals. *See Carrillo v. Rostro*, 1992-NMSC-054, ¶ 23, 114 N.M. 607, 845 P.2d 130 (noting that if the collateral order doctrine is applied in too many contexts, it will "allow interruption of trial court proceedings by any party claiming hardship because of postponement of review[,]" and "piecemeal appeals . . . will become the order of the day").

**{25}**　We nevertheless exercise our discretion to decide the merits of the authentication issue because, under the unusual facts of this case, declining to review the issue at this juncture would not advance the interests underlying the collateral order doctrine. Because we have granted the writ of error to review other issues that are properly before us, our simultaneous review of the related authentication question does not increase delay and involves minimal expenditure of appellate resources.

**{26}**　Where, as here, a party has raised a timely objection to evidence submitted in summary judgment proceedings, the proponent of the evidence must "set forth facts as would be admissible in evidence[.]" *Mealand*, 2001-NMCA-089, ¶ 23 (internal quotation marks and citation omitted). A district court's evidentiary rulings, including rulings on the authenticity of evidence, "will not be disturbed absent a clear abuse of discretion." *Trujillo*, 2002-NMSC-005, ¶ 15 (internal quotation marks and citations omitted); *State v. Mora*, 1997-NMSC-060, ¶ 53, 124 N.M. 346, 950 P.2d 789 (reviewing ruling on authenticity of documents for abuse of discretion), *abrogated on other grounds by State v. Frazier*, 2007-NMSC-032, 142 N.M. 120, 164 P.3d 1. We will not presume that the district court abused its discretion, *State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491, but will instead presume the "rectitude and regularity" of the proceedings, *State v. Gonzales*, 1986-NMCA-050, ¶ 28, 105 N.M. 238, 731 P.2d 381, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. The party

challenging an evidentiary ruling bears the burden of establishing that it "was obviously erroneous, arbitrary or unwarranted." *Trujillo*, 2002-NMSC-005, ¶ 15 (internal quotation marks and citations omitted).

**{27}** When authentication is at issue, "[t]here is no abuse of discretion when the evidence is shown by a preponderance of the evidence to be what it purports to be." *State v. Jackson*, 2018-NMCA-066, ¶ 13, 429 P.3d 674 (internal quotation marks and citation omitted). Rule 11-901(A) NMRA states: "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(B) provides a non-exhaustive list of examples of evidence that satisfy the authentication requirement. One example is evidence that has "[d]istinctive characteristics and the like." Rule 11-901(B)(4). An item of evidence may be authenticated based on distinctive characteristics when "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances" support a finding that the item is what it purports to be. *Id.*

**{28}** The district court did not abuse its discretion because various distinctive characteristics of the Regulations provided it with a sufficient basis for concluding that they were more likely than not authentic. The first page of the document includes a distinctive logo that features the school's nickname (New Mexico Tech), a graphic representation of three mountains, and the words "SCIENCE," "ENGINEERING," "RESEARCH," and "UNIVERSITY." This same logo appears on two other key documents that the court and the parties treated as authentic: the parties' contract for the 2011/2012 academic year and the memorandum notifying Plaintiff of Defendant's decision to terminate him. The first page of the Regulations also includes an appropriate title, the formal name of the school, and the school's location. The second page includes a table of contents with many headings, all of which describe subject matter appropriate for regulations on academic freedom and tenure. The second page also states that the Regulations were "[a]pproved by the Board of Regents of New Mexico Institute of Mining and Technology" in 1985. The remaining ten pages of the document include text that addresses, in the order indicated, the same topics listed in the table of contents. The "appearance, contents, substance, [and] internal patterns," Rule 11-901(B)(4), of the Regulations sufficiently supported the district court's conclusion that they were authentic.[6] Its decision to consider the Regulations therefore was not "obviously erroneous, arbitrary or unwarranted." *Trujillo*, 2002-NMSC-005, ¶ 15 (internal quotation marks and citations omitted).

**CONCLUSION**

**{29}** We affirm the district court's order denying Defendant's motion for summary judgment and remand for further proceedings consistent with this opinion.

---

6 We express no opinion about whether Rule 11-901(B)(4) was the only proper vehicle for authenticating the Regulations.

**{30}** IT IS SO ORDERED.

**ZACHARY A. IVES, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**KRISTINA BOGARDUS, Judge**